Filed 5/31/13

# CERTIFIED FOR PARTIAL PUBLICATION[*]

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| SAN JOAQUIN RAPTOR RESCUE CENTER et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>COUNTY OF MERCED et al.,<br><br>    Defendants and Appellants;<br><br>WILLIAM MORRIS,<br><br>    Real Party in Interest and Respondent. | F064930<br><br>(Super. Ct. No. CV000629) |
| SAN JOAQUIN RAPTOR RESCUE CENTER et al.,<br><br>    Plaintiffs and Respondents,<br><br>        v.<br><br>COUNTY OF MERCED et al.,<br><br>    Defendants and Appellants. | F064675<br><br>(Super. Ct. No. CV000689)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Merced County. John D. Kirihara and Carol K. Ash, Judges.[†]

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts III., IV. and V.

[†]    Judge Kirihara pronounced judgment in case No. F064930; Judge Ash pronounced judgment in case No. F064675.

James N. Fincher, County Counsel, and Michael P. Calabrese, Deputy County Counsel, for Defendants and Appellants.

Law Offices of Donald B. Mooney, Donald B. Mooney and Marsha A. Burch, attorneys for Plaintiffs and Respondents.

No appearance for Real Party in Interest and Respondent William Morris.

-ooOoo-

The Ralph M. Brown Act (Gov. Code,[1] § 54950 et seq.; hereafter the Brown Act) requires, among other things, that the legislative body of a local agency shall post, at least 72 hours before a regular meeting, "an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting …." (§ 54954.2, subd. (a)(1).) The same section of the Brown Act adds that "[n]o action or discussion shall be undertaken on any item not appearing on the posted agenda …." (§ 54954.2, subd. (a)(2).) In the present case,[2] the Merced County Planning Commission (the Commission) posted an agenda that set forth, as one item of business for its upcoming meeting, the Commission's potential approval of a subdivision application submitted by William Morris to divide 380.45 acres into nine parcels (the project). The agenda, however, failed to mention that the Commission would *also* be considering whether or not to adopt a CEQA[3] document known as a mitigated negative declaration (MND)

---

[1]  Unless otherwise indicated, all further statutory references are to the Government Code.

[2]  We refer to case No. F064930 as "this" case or as the "present" case in our main discussion of the issues. We address a related and virtually identical case, No. F064675, at the end of our main discussion herein, in a more summary fashion. By prior order, we have consolidated case Nos. F064930 and F064675. There is a third related case also before us, case No. F064931, but we have not consolidated it herewith and that case will be addressed in a separate opinion.

[3]  An abbreviation of the California Environmental Quality Act, found at Public Resources Code section 21000 et seq.

2.

concerning the environmental impact of the project. At the meeting, the Commission approved the project *and* adopted the MND. Thereafter, San Joaquin Raptor Rescue Center and Protect Our Water (petitioners) filed a petition for writ of mandate against the County of Merced and the Commission (together the County)[4] seeking to set aside the approval of the project and the adoption of the MND on the ground that the Commission's adoption of the MND violated the agenda requirements of the Brown Act. Petitioners also alleged, as a separate cause of action, that the County failed to comply with a CEQA notice provision. Although the trial court eventually dismissed the Brown Act cause of action under the "cure and correct" provisions of that statute (§ 54960.1, subd. (e)), it found that a violation had occurred and that petitioners were entitled to an award of costs and attorney fees under section 54960.5 of the Brown Act. The County now appeals from the judgment, arguing that the agenda requirement was satisfied because the public would have implicitly understood that CEQA documents, if any, would likely be considered at the time of the project's approval. We disagree. As more fully explained herein, we conclude that the Brown Act was violated in this case because the Commission took action on the MND when that matter was not expressly disclosed on the meeting agenda. Accordingly, we affirm that portion of the judgment based on the Brown Act violation.[5]

---

[4] We frequently refer to the Commission separately in our discussion, even though the Commission is an agency of the County and not a separate entity.

[5] We will correct the portion of the judgment that was based on the alleged CEQA violation, since a failure to exhaust administrative remedies (raised by the County on demurrer) precluded the trial court's consideration of the merits of that cause of action.

# FACTS AND PROCEDURAL BACKGROUND

## The Public Meetings, Agendas and Actions Taken

The agenda issued by the Commission for its October 14, 2009, meeting included the following item of business:

> "V.   … MINOR SUBDIVISION APPLICATION No. MS07-030—William Morris—To divide three parcels totaling 380.45 acres into nine parcels, ranging from 40.00 acres to 54.72 acres in size.  The project site is located at the southwest corner of American Avenue and Mitchell Road in the Hilmar area.  The property is designated Agricultural land use in the General Plan and zoned A-1 (General Agricultural).  THE ACTION REQUESTED IS TO APPROVE, DISAPPROVE OR MODIFY THE APPLICATION.  JH."

No further description of this item of business was provided.  No mention was made in the agenda that the Commission would be considering the adoption of an MND in connection with the project.  At the October 14, 2009, meeting, the Commission approved the proposed project and, by separate motion, adopted the MND.

On October 19, 2009, petitioners sent a letter to the County objecting to the Commission's approval of the MND since "there was no mention [in the agenda] of consideration of a CEQA document of any kind."  The letter stated that such action violated the Brown Act and asked the Commission to "cure and correct"[6] the violation by rescinding the approval of the project and the adoption of the MND.  The Commission, at its meeting held on October 28, 2009, denied the request to cure or correct the alleged violation.

On October 19, 2009, petitioners administratively appealed the Commission's approval of the project to the Board of Supervisors of Merced County (Board of Supervisors).

---

**6**    Before a lawsuit may be filed to set aside actions taken in violation of certain provisions of the Brown Act, the interested person must send a demand to the legislative body that it "cure or correct" the actions.  (§ 54960.1, subd. (b).)

4.

On January 26, 2010, the Board of Supervisors granted petitioners' administrative appeal. The Board of Supervisors directed the Commission to vacate its approval of the project and to hold a new meeting to re-address whether to approve the project and the MND after first issuing a new agenda in conformity with petitioners' request that the MND be expressly specified on the agenda. In granting the appeal, the Board of Supervisors did not admit that the Commission's actions violated the Brown Act, but indicated that it was good policy for the Commission to provide more information to the public in its agendas, in accordance with petitioners' request, even though arguably not required by the Brown Act.[7]

On February 10, 2010, the Commission complied with the Board of Supervisor's directive. The agenda for the Commission's February 10, 2010, meeting expressly listed the MND as an item of business along with the potential approval of the project. The Commission then heard the matter again, re-adopted the MND and re-approved the project.[8]

The Litigation

Pursuant to statutory deadline, a lawsuit to set aside or nullify the actions of a legislative body based on alleged violations of the Brown Act must be filed within

---

[7] The minutes of the January 26, 2010, meeting of the Board of Supervisors, at which the administrative appeal was granted, included the statement of County Counsel James Fincher that although no violation of the Brown Act occurred, it would be good policy to go beyond what is required and do the utmost to keep the public informed. It was also noted that when the Board of Supervisors considered such issues at its meetings, CEQA documents were always expressly specified in the Board of Supervisor's agendas, thus it made sense to have the Commission follow the same practice.

[8] The Commission's action at the February 10, 2010, meeting included rescinding both the prior approval of the project and the adoption of the MND, then re-approving and re-adopting same. The minutes reflect that these actions were taken based on the "policy direction" given to the Commission by the Board of Supervisors on January 26, 2010.

15 days after notice that a "cure or correct" request was denied by that body. (See § 54960.1, subd. (c)(3).) Here, as noted above, petitioners' cure or correct request was denied by the Commission on October 28, 2009.

On November 12, 2009, petitioners commenced their lawsuit against the County by filing a petition for writ of mandate seeking to have the approval of the project and adoption of the MND set aside. The petition alleged that a violation of the Brown Act had occurred because the agenda for the Commission's October 14, 2009, meeting failed to mention that it would be considering the adoption of an MND concerning the project. Thus, the Commission took action at the meeting on a matter that was not included on the agenda, which allegedly was in direct violation of section 54954.2.

The petition also included a separate cause of action for an alleged violation of a CEQA notice provision. The CEQA claim alleged that the County "did not provide sufficient or timely notice to the public of the intent to adopt the [MND] for the [p]roject under Public Resources Code section 21092 and 14 Cal. Code Regs. section 15072."

On December 24, 2009, the County demurred to the petition. The demurrer alleged that the petition failed to state a cause of action because (1) the Commission's agenda complied with the requirements of the Brown Act as a matter of law; (2) petitioners and others were given adequate notice under CEQA provisions, therefore no CEQA violation occurred; and (3) petitioners failed to exhaust administrative remedies with respect to the CEQA cause of action. Petitioners opposed the demurrer, arguing the causes of action were sufficiently stated and that the exhaustion of remedies defense should not be applied to the CEQA claim since it was more efficient to file both causes of action together and the Brown Act claim had a short statutory deadline.

The County filed a reply in support of its demurrer on February 2, 2010. The reply informed the trial court that the Board of Supervisors granted petitioners' administrative appeal: "The [B]oard [of Supervisors] recently heard petitioners' administrative appeal, on January 26, 2010, and ordered the [C]ommission to rehear the

[p]roject with direction that the [C]ommission, purely as a matter of sound policy, conform the format of its agenda descriptions to those of the [B]oard [of Supervisors] and include from now on the type of CEQA document before the [C]ommission." According to the County's reply, the trial court was required to dismiss the Brown Act claim since the alleged violations were "cured or corrected" pursuant to the provisions of section 54960.1, subdivision (e).

The hearing on the demurrer was held on February 9, 2010, and following oral argument the trial court took the matter under submission. On March 22, 2010, the trial court overruled the demurrers. The trial court's order did not expressly rule on the alleged failure to exhaust administrative remedies (as to the CEQA claim) and did not address the issue raised in the County's reply that the Brown Act claim should be dismissed under section 54960.1, subdivision (e).

On August 6, 2010, in an ironic reversal of positions, *petitioners* moved for a judicial determination that the alleged Brown Act violations were "cured and corrected" under section 54960.1, subdivision (e), based on the fact that on February 10, 2010, at the direction of the Board of Supervisors, the Commission had rescinded the approval of the project and the adoption of the MND, re-noticed those matters by a new agenda that expressly stated the MND would be considered, and then proceeded to re-approve the project and re-adopt the MND. The County *opposed* the motion, even though it had previously requested such a ruling. The County was apparently concerned that if it conceded the matter was cured or corrected, that might leave room for petitioners to argue in a future attorney fees motion that there was a Brown Act violation, which the County adamantly denied.[9] The trial court denied petitioners' motion.

---

[9] Under the relevant provision of the Brown Act, the mere fact that a legislative body takes a subsequent action to cure or correct an action previously taken "shall not be construed or admissible as evidence of a violation of this chapter." (§ 54960.1, subd. (f).)

7.

On June 28, 2011, the trial court heard oral argument on the merits of the petition for writ of mandate. On October 20, 2011, the trial court ruled on the petition, finding as follows on the Brown Act causes of action: "[T]his court finds a Brown Act [v]iolation did occur that was cured and corrected. The agenda item for the [p]roject did include a brief general description of the project, but not of all action items that were to be taken. The fact a MND was under consideration for certification is an action item that should have been included on the agenda. The Board [of Supervisors] rescinded the approval and directed the … Commission to include the CEQA decision on the [a]genda, thus curing and correcting the previous Brown Act violation on February 20, 2010. The [Brown Act] cause of action is dismissed with prejudice. <u>Government Code</u> § 54960.1[, subdivision] (e)."

As to the separate CEQA cause of action, the trial court found: "[A] CEQA [v]iolation did occur because the Notice did not give the correct date of the public hearing. However, said alleged CEQA violation [is] moot because the … Commission's action, rescinding the approval of the project and MND, re-noticing the meeting, re-certifying the CEQA document and re-approving the [p]roject cured and corrected the alleged CEQA violation. Therefore, the [CEQA] Cause of Action is dismissed as moot."

Following this ruling but before entry of judgment, a dispute ensued as to which party was the prevailing party for purposes of recovery of statutory costs and attorney fees. The trial court issued what it called an order on judgment in which it found, based on the Brown Act attorney fees and cost provision (§ 54960.5), that petitioners had prevailed in their lawsuit under the Brown Act and were entitled to an award of costs and attorney fees under that section. The trial court noted that the County had consistently denied that the Brown Act had been violated; hence, petitioners' lawsuit was necessary to resolve the issue and to prevent a recurrence. Judgment was entered in petitioners' favor.

The County appealed from the judgment.

## DISCUSSION

### I.      Standard of Review

Ordinarily, "[o]n appeal following a trial court's decision on a petition for a writ of mandate, the reviewing court '"need only review the record to determine whether the trial court's findings are supported by substantial evidence."'  [Citations.]  However, we review questions of law independently.  [Citation.]" (*Alliance for a Better Downtown Millbrae v. Wade* (2003) 108 Cal.App.4th 123, 129.)  Where, as here, an appeal involves the application of a statute to undisputed facts, our review is de novo.  (*Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; *Alliance for a Better Downtown Millbrae v. Wade*, *supra*, at p. 129.)  Additionally, statutory construction is a question of law requiring our independent review.  (*Botello v. Shell Oil Co*. (1991) 229 Cal.App.3d 1130, 1134.)

### II.      The Trial Court Correctly Found a Brown Act Violation

#### A.      *Overview of the Brown Act*

The Brown Act, one of California's open meeting laws, provides, among other things, that "[a]ll meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter." (§ 54953, subd. (a).)  The Brown Act begins with a forceful declaration of the Legislature's purpose:  "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business.  It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.  [¶]  The people of this State do not yield their sovereignty to the agencies which serve them.  The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know.  The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950.)

9.

To accomplish these vital goals, the Brown Act, inter alia, (1) requires that an agenda be posted at least 72 hours before a regular meeting and (2) forbids action on any item not on that agenda. (§ 54954.2, subd. (a)(1) & (2); *Epstein v. Hollywood Entertainment Dist. II Bus. Improvement Dist.* (2001) 87 Cal.App.4th 862, 868 (*Epstein*).) In this way, "'[t]he [Brown] Act … serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation of public bodies. [Citation.]' [Citation.]" (*Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors* (2003) 112 Cal.App.4th 1313, 1321-1322.)

The section of the Brown Act requiring an agenda for regular meetings states more fully as follows: "At least 72 hours before a regular meeting, the legislative body of the local agency,[10] or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session. A brief general description of an item generally need not exceed 20 words. The agenda shall specify the time and location of the regular meeting and shall be posted in a location that is freely accessible to members of the public and on the local agency's Internet Web site, if the local agency has one.…" (§ 54954.2, subd. (a)(1).)[11] This agenda requirement acts as a limitation on what the public body is authorized to do at the meeting, because the statute further states that "[n]o

---

[10] A "'local agency'" includes a city or county "or any board, commission or agency thereof …." (§ 54951.) A "'legislative body'" includes "[t]he governing body of a local agency" and "[a] commission, committee, board, or other body of a local agency, whether permanent or temporary, decisionmaking or advisory, created by charter, ordinance, resolution, or formal action of a legislative body." (§ 54952, subds. (a) & (b).) There is no question that the Commission comes within these broad definitions.

[11] The provision regarding use of the local agency's Internet Web site is new. (Stats. 2011, ch. 692, § 8, pp. 5422-5423.) That newly added language is not relevant to any issue in the present appeal, but is set forth here to show the most current version of the statute.

10.

action or discussion shall be undertaken on any item not appearing on the posted agenda ….” (§ 54954.2, subd. (a)(2).)[12]

B. *The Agenda Requirement of the Brown Act Was Violated*

Applying the agenda requirement of the Brown Act to the undisputed facts of this case, we have no difficulty concluding that the Commission violated that requirement. The Brown Act clearly and unambiguously states that an agenda shall describe “*each item of business* to be transacted or discussed” at the meeting. (§ 54954.2, subd. (a)(1), italics added.) Here, the Commission failed to disclose in its agenda that it would be considering the adoption of the MND at its October 14, 2009, meeting. The adoption of the MND was plainly a distinct item of business, and not a mere component of project approval, since it (1) involved a separate action or determination by the Commission[13] and (2) concerned discrete, significant issues of CEQA compliance and the project's environmental impact.[14] As an individual item of business, it had to be expressly

---

[12] A few limited exceptions to this rule are set forth in section 54954.2, subdivisions (a)(2) and (b).

[13] The adoption of an MND must be based upon a *determination* by a public agency as to the environmental impact of a project. (See Pub. Resources Code, §§ 21080, subds. (c) & (d), 21080.1, subd. (a).) In essence, the adoption of an MND means the public agency has determined that the project, as revised or mitigated, would have no significant effect on the environment and thus an environmental impact report (EIR) is unnecessary. (Pub. Resources Code, § 21080, subds. (c) & (d).) The minutes of the Commission's meeting of October 14, 2009, reflect that the MND was approved, with the required CEQA findings, by a separate motion and vote of the Commission.

[14] A “‘[n]egative declaration’” means “a written statement briefly describing the reasons that a proposed project will not have a significant effect on the environment and does not require the preparation of an environmental impact report.” (Pub. Resources Code, § 21064.) A “‘[m]itigated negative declaration’” means “a negative declaration prepared for a project when the initial study has identified potentially significant effects on the environment, but (1) revisions in the project plan or proposals made by, or agreed to by, the applicant before the proposed negative declaration and initial study are released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effect on the environment would occur, and (2) there is no substantial

11.

disclosed on the agenda; it was not sufficient for the agenda to merely reference the project in general. Because the Commission discussed and adopted the MND at its October 14, 2009, meeting even though that matter was not set forth on the meeting agenda, it violated the Brown Act. (§ 54954.2, subd. (a)(1) & (2).)

We are further persuaded of the correctness of this conclusion by the fact that a public agency's decision whether to adopt or certify a CEQA document (such as a negative declaration, MND or an EIR) is always a matter of at least *potential* public interest since it would concern the local environmental effects of a proposed project.[15] Such issues often motivate members of the public to participate in the process and have their voices heard. Of course, that is exactly what the Brown Act seeks to facilitate. Its purposes include ensuring that the public is adequately notified of what will be addressed at a meeting in order to facilitate public participation and avoid secret legislation or decisionmaking. (§ 54950; *Los Angeles Times Communications v. Los Angeles County Bd. of Supervisors*, *supra*, 112 Cal.App.4th at pp. 1321-1322.) Those purposes would be impaired if a public agency could refuse to disclose in its meeting agenda that it will be considering approval of a CEQA document. Such an approach would allow a potentially controversial issue to be quietly proposed and decided without having to open the discussion to meaningful public input.[16] That is one of the evils the Brown Act was

---

evidence in light of the whole record before the public agency that the project, as revised, may have a significant effect on the environment." (Pub. Resources Code, § 21064.5.)

[15] CEQA has its own notice statute that comes into play when a public agency proposes to adopt a negative declaration or certify an EIR. (Pub. Resources Code, § 21092, subd. (a).) However, contrary to the County's unsupported argument, nothing in the CEQA notice provision would relieve the County of having to comply with the Brown Act concerning *meeting agendas*. Additionally, although a notice of intent (NOI) to adopt a mitigated negative declaration was issued by the County in July 2009, it contained an erroneous hearing date.

12.

designed to prevent. (§ 54950; see *Epstein*, *supra*, 87 Cal.App.4th at p. 869 [the Brown Act is construed liberally to accomplish its remedial purposes].)

As should be apparent, we also reject the County's argument that the agenda's reference to *another* item of business—the Commission's potential approval of the project—somehow provided enough information to the public. Even assuming for the sake of argument that a person could have speculated from what appeared in the agenda (i.e., the project's approval) that the adoption of the MND *might possibly* be considered at the meeting, that would not make the agenda legally adequate. The Brown Act mandates that *each* item of business be *described* on the agenda, not left to speculation or surmise.[17] And, as we have concluded herein, the Commission's adoption of the MND was a distinct item of business that had to appear on the agenda before it could be discussed and decided. Nor is the County helped by the fact that the statute only requires "a brief general description" of each item of business (§ 54954.2, subd. (a)(1)), since the agenda in question did not mention the MND in even the most general terms. Moreover, contrary to the County's position that the agenda adequately alerted the public, it seems more likely to us that the net effect of the approach taken by the Commission would be to mislead (*not* inform) the public about what items of business would be addressed at the meeting, due to the material omission of the MND from the agenda. (See, e.g., *Moreno v. City of King* (2005) 127 Cal.App.4th 17, 26-27 [an agenda stating "'Public Employee

---

**16**     Additionally, CEQA contains short, mandatory statute of limitations and rigorous exhaustion requirements (see, e.g., Pub. Resources Code, §§ 21167 & 21177), which make the County's approach even more detrimental in this particular context.

**17**     Furthermore, it does not appear to us that the consideration of a project necessarily means, in every case, that a CEQA document will be considered at that same meeting. For example, nothing in CEQA prevents an agency from holding a separate hearing on the CEQA document and then approving the underlying project at a later meeting. Additionally, if a project was found to be exempt, there may not be a CEQA document at all.

13.

(employment contract)'" was inadequate to describe the fact that a particular employee's *dismissal* would be discussed]; *Carlson v. Paradise Unified Sch. Dist*. (1971) 18 Cal.App.3d 196, 200 [under Ed. Code provisions, an agenda describing the subject matter of a meeting was inadequate and misleading where a vital part of the proposed actions—the school's "closure"—was left out].)

Finally, we reject the County's policy argument that the inclusion of CEQA documents in meeting agendas will make the agendas so lengthy and cumbersome that they will no longer be useful. We do not believe that a brief, general statement to the effect that the public agency will be considering the adoption or certification of a CEQA document would have that result. Here, for example, the Commission could have easily complied with the agenda requirement by simply adding a few words, such as "and consider adoption of a mitigated negative declaration" regarding the project. In any event, even assuming the County is correct that agendas disclosing CEQA documents as items of business are more cumbersome, we would still be required to apply the Brown Act in accordance with its clear terms, as we have done.

We hold that the trial court correctly decided the Brown Act was violated in this case based on the Commission's failure to comply with the agenda requirements set forth in section 54954.2, subdivision (a)(1) and (2). As part of its judgment, the trial court also determined that petitioners were prevailing parties and were entitled to recover costs of suit under the Brown Act in an amount to be determined. As to the trial court's discretion to award statutory costs and attorney fees, former section 54960.5 stated that a "court may award court costs and reasonable attorney fees to the plaintiff[s] in an action brought pursuant to Section 54960 or 54960.1 where it is found that a legislative body of the local agency has violated [the Brown Act]." In light of our holding that the Brown Act was violated, we reject the County's argument that it was the true prevailing party under section 54960.5. Rather, the trial court correctly held that petitioners prevailed and were entitled to bring a motion for such fees and costs. However, inasmuch as the trial court's

14.

subsequent order awarding attorney fees and costs under section 54960.5 is not before us in the present appeal, but is the subject of a separate appeal, we do not venture beyond what we have stated here concerning that matter.[18]

### III.   No Error Shown for Failure to Dismiss Brown Act Cause of Action at Demurrer Hearing[*]

The County argues that the trial court erred in reaching the merits of the Brown Act cause of action because, according to the County, that claim should have been dismissed at the time of the demurrer hearing pursuant to the cure and correct provisions of section 54960.1, subdivision (e).[19]  The County has failed to demonstrate any error on this point, as we now explain.

In its demurrer to the petition, the County did not mention any action taken to cure or correct the alleged Brown Act violation.  That was not a ground of its demurrer.  In its February 2, 2010, *reply* brief in support of demurrer, the County argued that a recent action by the Board of Supervisors entitled the County to a dismissal under section 54960.1, subdivision (e).  The County's reply referred to the fact that at the January 26, 2010, meeting of the Board of Supervisors, the Board had granted petitioners' administrative appeal challenging the Commission's approval of the project and adoption of the MND.  The Board's decision to grant petitioners' appeal sent the matter back to the Commission to take certain actions.  However, at the time of the February 9, 2010,

---

[18]    That separate appeal by the County is case No. F066060.

[*]    See footnote, *ante*, page 1.

[19]    Section 54960.1, subdivision (e), states:  "During any action seeking a judicial determination pursuant to subdivision (a) if the court determines, pursuant to a showing by the legislative body that an action alleged to have been taken in violation of Section 54953, 54954.2, 54954.5, 54954.6, 54956, or 54956.5 has been cured or corrected by a subsequent action of the legislative body, the action filed pursuant to subdivision (a) shall be dismissed with prejudice."

15.

demurrer hearing, the Commission had not yet taken any corrective or curative measures.[20]

In its order overruling the demurrer, the trial court stated it did not wish to turn a demurrer into an evidentiary hearing on the merits. The trial court's order indicated that it would be more appropriate to delve into evidentiary matters, including a consideration of multiple documents that had been submitted for judicial notice, in the context of an evidentiary hearing. Thus, while the trial court overruled the demurrer and did not address the County's reply argument that new circumstances existed warranting a dismissal of the Brown Act cause of action, the trial court effectively *invited* the parties to make a subsequent evidentiary motion or motions to address such issues. Although the trial court took a cautious approach in light of the demurrer stage of the proceedings, the County has failed to demonstrate any prejudicial error in that approach. Moreover, considering the unique procedural status and nature of the record before the trial court at the time of the demurrer hearing, where (1) the alleged basis for dismissal was not a ground for the demurrer nor included in the notice of motion or moving papers, but was raised as an entirely new matter in the reply[21] and (2) the curative measures had not yet been undertaken by the Commission, we discern no abuse of discretion in merely allowing the dismissal request to be handled by a postdemurrer evidentiary motion.

---

[20]    The Commission met the next day, on February 10, 2010, and at that time it carried out the corrective or curative measures directed by the County. Obviously, such facts were not before the trial court at the time of the demurrer. At the demurrer hearing on February 9, 2010, petitioners' counsel noted during oral argument that it had requested the County and real party in interest agree to a continuance of the demurrer hearing "so we could find out whether or not the … [C]ommission would cure and correct the Brown Act Notice so we could avoid the expense of appearing. [¶] But the County and the real parties in interest were unwilling to agree to that."

[21]    A trial court has discretion to refuse to entertain new matters raised for the first time in reply papers; conversely, it has discretion to consider such matters if the opposing party is given an opportunity to respond. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2012), § 9:106.1, p. 9(I)-(83).)

16.

What is puzzling is that the County failed to make such a motion to dismiss. On April 11, 2010, petitioners' counsel sent a letter to inquire why no motion had been made for a dismissal based on the cure or correct provisions set forth in section 54960.1, subdivision (e). That letter pointed out the following: "[The trial court] indicated that he could not rule on the County's request for dismissal as it was not an issue before the Court. The argument was raised for the first time in the reply brief, and the Court suggested that it could be addressed in a motion to dismiss. [¶] … [¶] It is entirely unclear why the County has not pursued dismissal, and Ms. Greene indicated that it was a result of the County not 'reaching that point in their thinking.' [¶] …[¶] If it is still the County's position that the matter has become moot because of the … Commission's actions to cure and correct the agenda violations, we are willing to prepare a stipulation for dismissal of the action." We also cannot ignore that when petitioners moved for a judicial determination that the County had cured and corrected the alleged Brown Act violations under section 54960.1, subdivision (e), the County *opposed* the motion. The County's opposition stated that the motion was the County's "alone to make," and that the County could "decide to proceed to a hearing to resolve this case …." Obviously, the County understood that it could make a motion to dismiss under section 54960.1, subdivision (e), at any time, and yet it chose not to do so.

IV.     **Petitioners Failed to Exhaust Administrative Remedies as to CEQA Claim**[*]

Following the hearing on the merits of the petition, the trial court held as to the CEQA cause of action that the NOI issued by the County (in July 2009), concerning its intention to adopt in the future an MND on the project, was in violation of Public Resources Code section 21092 (a CEQA notice statute regarding NOI's) because the NOI did not give the correct date of the public hearing. Despite this holding on the merits, the trial court went on to dismiss the CEQA cause of action as "moot" because "the …

---

[*]     See footnote, *ante*, page 1.

17.

Commission's action, rescinding the approval of the project and MND, re-noticing the meeting, re-certifying the CEQA document and re-approving the project … corrected the alleged CEQA violation."

The County contends the trial court should not have reached the merits of the CEQA cause of action because petitioners failed to exhaust administrative remedies, which defense was properly raised in the County's demurrer. The County is correct. The trial court should have sustained the demurrer to the CEQA claim on this ground. Furthermore, since the matter was resolved and rendered moot by the administrative process, the trial court should never have reached the merits of the CEQA claim.

"In general, a party must exhaust administrative remedies before resorting to the courts. [Citations.] Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.' [Citations.]" (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) A party must proceed through the full administrative review process to a final decision on the merits before resorting to the courts. (*California Water Impact Network v. Newhall County Water Dist.* (2008) 161 Cal.App.4th 1464, 1489.) The rule is considered "a jurisdictional prerequisite" to judicial review. (*Ibid.*; *Tahoe Vista Concerned Citizens v. County of Placer* (2000) 81 Cal.App.4th 577, 589.) The doctrine applies "as a complete defense to litigation commenced by persons who have been aggrieved by action taken in an administrative proceeding which has occurred in fact, but who have failed to 'exhaust' the remedy against such action which is available to them in the course of the proceeding itself. [Citations.]" (*Environmental Law Fund, Inc. v. Town of Corte Madera* (1975) 49 Cal.App.3d 105, 112.)

Following the Commission's vote to approve the project and adopt the MND on October 14, 2009, an administrative appeal to the Board of Supervisors was available to petitioners under provisions of the Merced County Code, including under

18.

sections 2.32.130, 17.04.090 and 18.50.100. There is no dispute that petitioners filed a timely appeal of the Commission's determinations to the Board of Supervisors, as alleged in the petition. Yet petitioners filed their CEQA cause of action against the County on November 12, 2009, before the Board of Supervisors had an opportunity to address the issue in the administrative appeal. Accordingly, when the County raised petitioners' failure to exhaust administrative remedies in its demurrer, the trial court erred when it failed to sustain that demurrer. The convenience of joining the distinct CEQA cause of action with the Brown Act cause of action in a single pleading (the latter of which had to be filed within a very short time frame) did not excuse the failure to exhaust administrative remedies as to the CEQA cause of action. Otherwise, considerations of convenience or efficiency would swallow up the rule that parties must exhaust administrative remedies on a discrete claim or dispute before resorting to the courts. We therefore reverse that portion of the judgment in which the trial court ruled on the merits of the CEQA cause of action, but leave intact the trial court's dismissal thereof on the ground of mootness.

## V.    Case No. F064675[*]

In a related case (No. F064675), the Commission approved another project (a major subdivision called "Lucca Villas" that would divide 22.2 acres into 17 family residential lots). In identical fashion to the above case (No. F064930), the Commission did not include on the meeting agenda the fact that the Commission was considering the adoption of a CEQA document (the MND) relating to the project. Following the Commission's approval of the project and adoption of the MND, and after initiating an administrative appeal to the Board of Supervisors, petitioners filed a petition for writ of mandate seeking to set aside the Commission's approval of the project and adoption of the MND on the ground that the Commission violated the agenda requirement of the

---

[*]    See footnote, *ante*, page 1.

19.

Brown Act and, in a separate cause of action, that CEQA notice provisions were violated. The County demurred to the petition on the ground that the Commission did not violate the Brown Act or CEQA, and that petitioners failed to exhaust their administrative remedies with respect to the CEQA cause of action. The trial court overruled the demurrers. Later, a hearing was held on the merits of the petition. The trial court made the following determinations: (1) a Brown Act violation did occur due to the Commission's failure to comply with the agenda-notice requirement, but since the violation was subsequently cured or corrected, the cause of action was dismissed; (2) the CEQA cause of action was "dismissed as moot" because the real party in interest "ha[d] withdrawn the project application"; and (3) "[p]etitioners shall recover their costs of suit in the amount [to be determined]." The County appealed, contending that the trial court erred in concluding there was a Brown Act violation and in failing to sustain the demurrer to the CEQA cause of action on the ground of failure to exhaust administrative remedies.

Although the particular project and dates may have differed, it is clear that the sequence of events, proceedings, and the legal issues in case No. F064675 were essentially the same as in case No. F064930. We note two minor differences: First, in case No. F064675, the County did not argue that the Brown Act cause of action should have been dismissed at the time of the demurrer hearing pursuant to the cure and correct provisions of the Act; second, in case No. F064675, the trial court never ruled on the merits of the CEQA cause of action because the real party in interest had elected to withdraw the project application rendering that cause of action moot. Because of the latter fact, there is no need to correct or modify the judgment concerning the CEQA cause of action in case No. F064675 as we did in case No. F064930, even though the County is technically correct that the trial court should have sustained the demurrer to the CEQA cause of action based on failure to exhaust administrative remedies. In all other respects, the same result follows because our analysis of the legal issues and the conclusions we

20.

reach in both case Nos. F064930 and F064675 are the same. For the reasons we expressed above with respect to case No. F064930, we hold that in F064675, the trial court correctly found that there was a Brown Act violation and that petitioners were prevailing parties. Thus, the judgment below is affirmed.

## DISPOSITION

The portion of the judgment in case No. F064930 addressing the CEQA cause of action is modified to vacate the finding on the merits of that claim. The judgments are affirmed in all other respects. Costs on appeal are awarded to petitioners.

_____
Kane, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Cornell, J.

21.