Filed 11/22/22 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| G.I. INDUSTRIES, | 2d Civ. No. B317201 |
| | (Super. Ct. No. 56-2021- |
| Plaintiff and Appellant, | 00554581-CU-WM-VTA) |
| | (Ventura County) |
| v. | |
| | |
| CITY OF THOUSAND OAKS et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| | [No Change in Judgment] |
| Defendants and Respondents; | |
| | |
| ARAKELIAN ENTERPRISES, INC., | |
| | |
| Real Party in Interest. | |

THE COURT:

It is ordered that the opinion filed herein on October 26, 2022, be modified as follows:

1. On page 2, the first full paragraph, the following sentence is inserted after the second sentence: "This is something local residents would want to know."

2. On page 7, the last sentence of the first full paragraph under "(b) CEQA" reading "It is undisputed that the contract at

issue here qualifies as a project within the meaning of CEQA" is eliminated.

3. On page 12, the first sentence of the second full paragraph is amended to read, "But WM's petition alleges that a finding of a CEQA exemption was expressly made by motion and voted on at the meeting."

4. On page 12, the second sentence of the third full paragraph, the word "council" is deleted so the sentence reads, "Here the City, as the only agency involved in approving the contract, is the lead agency."

5. On page 14, the second sentence in the second paragraph under "*Remedy*" is amended to read, "WM has alleged sufficient facts that if proven would at least entitle it to have the CEQA exemption determination declared void."

6. On page 14, the third sentence in the second paragraph under "*Remedy*" is amended to read, "We need not determine now whether it may be entitled to any other relief."

There is no change in the judgment.

Respondent City of Thousand Oaks, and Real Party in Interest Arakelian Enterprises' petitions for rehearing are denied.

_____

GILBERT, P.J.        PERREN, J.*        BALTODANO, J.

_____

\* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| G.I. INDUSTRIES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF THOUSAND OAKS et al.,<br><br>    Defendants and Respondents;<br><br>ARAKELIAN ENTERPRISES, INC.,<br><br>    Real Party in Interest and Respondent. | 2d Civ. No. B317201<br>(Super. Ct. No. 56-2021-00554581-CU-WM-VTA)<br>(Ventura County) |

The Ralph M. Brown Act (Brown Act), (Gov. Code,[1] § 54950, et seq.) requires public agencies to conduct their business in the open with adequate notice to the public.  Here, a local agency found that a project is exempt from the California Environmental Quality Act (CEQA) (Pub. Resources Code § 21000, et seq.).

---

[1] All further references are to the Government Code unless otherwise indicated.

Section 54954.2 of the Brown Act, requires this CEQA finding of exemption to be listed on the agency's agenda for its public meeting.  It was not.  The trial court erred when it entered judgment after sustaining demurrers without leave to amend brought by a local agency and the real party in interest.  We reverse.

FACTS

G.I. Industries,[2] doing business as Waste Management (WM), provided solid waste management for the City of Thousand Oaks (City).

The City was considering entering into a new exclusive solid waste franchise agreement with Arakelian Enterprises, Inc. doing business as Athens Services (Athens).  The agreement is for a 15-year term beginning January 1, 2022, and ending December 31, 2036.

On March 4, 2021, the City posted an agenda for a regular meeting of the City council to be held on March 9, 2021.  An item on the agenda stated that the City would consider awarding the franchise agreement to Athens, along with a note that the City's staff recommended approval.  One item was not listed on the City's agenda, that the City would also consider whether the agreement is exempt from CEQA.  Nor did the agenda include the City staff's recommendation that the City find the agreement to be categorically exempt.

On March 5, 2021, WM submitted a comment letter to the City raising WM's concern that the City had not considered potentially adverse environmental impacts if the new franchise agreement were approved.

_____

[2] We deny appellant's request for judicial notice filed February 16, 2022.

2

It was not until 3:30 p.m. on March 9, 2021, the day of the City council meeting, that a supplemental item was posted giving notice of the staff's recommendation that the City find the agreement to be exempt from CEQA. The posting included a supplemental information packet with the City staff's recommendation for the exemptions. The staff found the franchise award to be categorically exempt pursuant to the CEQA Guidelines[3] under the "existing facilities" and "actions by regulatory agencies for the protection of the environment" exemptions. (Guidelines, §§ 15301, 15308.) The staff also found the franchise award exempt under the so-called "common-sense" exemption. (*Id.*, § 15061 (b)(3).)

*City Council Meeting*

During the council meeting representatives of Athens stated that the vehicle and hauling yard for the project might be located in Santa Paula, Sun Valley or "other options." The staff report did not consider the potential impacts of the use of the alternative sites which also involve trucks hauling trash throughout the City.

The City attorney stated, "There's been a lot of questions raised about the environmental impacts of this." Nevertheless, the City attorney recommended adopting the staff's finding of CEQA exemptions.

A council member moved to approve the Athens franchise agreement. The mayor suggested the council member include in the motion a finding that the project is exempt from CEQA. The council member agreed. The City council adopted the motion as amended to include the CEQA exemptions. The minutes of the

---

[3] All references to Guidelines are references to title 14 of the California Code of Regulations, section 15000 et seq.

meeting reflect separate actions by the council in approving the agreement and in finding it exempt from CEQA. The City then filed a notice of exemption with the county clerk on March 15, 2021.

*Cure and Correct Letter*

As required by section 54960.1, subdivision (b), prior to the commencement of litigation under the Brown Act, WM sent the City a "cure and correct" letter. The letter stated in part:

"The City Council violated the Brown Act on March 9, 2021 by voting to adopt a Notice of Exemption (NOE) pursuant to the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) prior to adopting the Franchise Agreement and without adequate notice to the public as a part of the posted agenda for the meeting.

"The Brown Act requires a posted agenda to include a description of each item of business to be considered at a legislative body's meeting at least 72-hours prior to the meeting. (Gov. Code, § 54954.2, subd. (a)(1).)"

The City did not respond to the letter within 30 days, which is deemed a decision not to cure or correct the challenged action. (§ 54960.1, subd. (c)(3).)

*Procedure*

WM petitioned the trial court for a writ of mandate directing the City to vacate both its approval of the franchise agreement and its finding that the project is exempt from CEQA. Athens was joined as the real party in interest. The petition alleged that the City violated section 54954.2 of the Brown Act by voting to adopt the CEQA exemptions without including CEQA exemptions as an agenda item at least 72 hours prior to the City council meeting.

4

The City and Athens demurred to the complaint. The trial court sustained the demurrer without leave to amend. The court agreed with WM that the CEQA exemption is an item of business separate from approval of the franchise agreement. The court also concluded that because CEQA does not require a public hearing for an exemption determination, the Brown Act does not apply.

## DISCUSSION

### I.

### *Standard of Review*

The function of a demurrer is to test whether, as a matter of law, the facts alleged in the complaint state of a cause of action under any legal theory. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) We assume the truth of all facts properly pleaded, as well as facts of which the trial court properly took judicial notice. (*Ibid*.) But we do not assume the truth of contentions, deductions, or conclusions of law. (*Ibid*.) Our review of the trial court's decision is de novo.

We review the trial court's decision to allow an amendment to the complaint for an abuse of discretion. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 273-274, overruled on other grounds by *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 199.) Where there is no reasonable possibility that plaintiff can cure the defect with an amendment, sustaining a demurrer without leave to amend is not an abuse of discretion. (*Id*. at p. 274.)

5

## II.

### *Statutory Background*

#### (a) Brown Act

The Brown Act begins with a declaration of purpose: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the People's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly." (§ 54950.)

To effectuate this purpose, section 54954.2, subdivision (a)(1) provides in part: "At least 72 hours before a regular meeting, the legislative body of the local agency, or its designee, shall post an agenda containing a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session."

The public has the right to address the local agency. Section 54954.3, subdivision (a) provides in part: "Every agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body, provided that no action shall be taken on any item not appearing on the agenda."

Any interested person may petition the court for the purpose of obtaining a judicial determination that an act taken in violation of section 54954.2 is null and void. (§ 54960.1, subd. (a).)

6

The Brown Act is supported by the California Constitution. Article 1, section 3, subdivision (b), paragraphs (1) and (2) of the California Constitution provide in part:

"(1) The People have the right of access to information concerning the conduct of the People's business, and, therefore, the meetings of public bodies and writings of public officials and agencies shall be open to public scrutiny.

"(2) A statute, court rule, or other authority, including those in effect on the effective date of this subdivision, shall be broadly construed if it furthers the People's right of access, and narrowly construed if it limits the right of access."

## (b) CEQA

The first step in an environmental analysis is to determine whether an activity qualifies as a "project" within the meaning of CEQA. Not everything a local agency does is a project subject to CEQA. CEQA generally applies "to discretionary projects proposed to be carried out or approved by public agencies." (Pub. Resources Code, § 21080, subd. (a).) That includes an activity that is supported through public agency contracts, grants, subsidies, loans or other forms of assistance, which activity may cause a physical change to the environment. (Guidelines, § 15378 (a)(2).) It is undisputed that the contract at issue here qualifies as a project within the meaning of CEQA.

If an activity is determined to be a project, the next phase of inquiry is to determine whether the project is exempt from CEQA. Our Legislature has created a number of statutory exemptions (Pub. Resources Code, § 21080, subd. (b)) and has directed the Secretary of the Natural Resources to create further exemptions for projects that have been determined not to have a significant impact on the environment (*id*., § 21084, subd. (a); see

7

Guidelines, § 15300, et seq.)  Exemptions created by such regulations are called "categorical exemptions." (Guidelines, § 15354.)  In addition to statutory and categorical exemptions, there is a "common sense" exemption, "[w]here it can be seen with certainty that there is no possibility that the activity in question may have a significant effect on the environment."  (*Id.*, § 15061 (b)(3).)

Where a project is found to be exempt from CEQA, no further environmental review is necessary.  (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380.)  If a project is not exempt, environmental review must proceed.  (*Id.* at pp. 380-381.)

### III.

### *The Brown Act Applies*

The factual allegations of WM's petition are sufficient to state a cause of action.

By its terms the Brown Act applies to the City's determination that the Athen's project is exempt from CEQA. That determination was an item of business transacted at a regular meeting of a local legislative body.  (§ 54954.2, subd. (a).) WM alleges it did not receive the appropriate agenda notice, and was thus deprived of a meaningful opportunity to be heard.

In *San Joaquin Raptor Rescue Center v. County of Merced* (2013) 216 Cal.App.4th 1167 (*San Joaquin Raptor*), the county's planning commission listed the approval, disapproval, or modification of a subdivision application as an agenda item.  The agenda did not mention that the commission would be considering the adoption of a mitigated negative declaration (MND) under CEQA.  The commission approved the subdivision application, and, by separate motion, adopted the MND.

8

San Joaquin Raptor Rescue objected that the commission's agenda did not provide the required notice that an MND determination would be made.  The trial court found a violation of the Brown Act.  The Court of Appeal agreed.  The Court of Appeal stated:

"The Brown Act clearly and unambiguously states that an agenda shall describe '*each item of business* to be transacted or discussed' at the meeting. (§ 54954.2, subd. (a)(1), italics added.)  Here, the Commission failed to disclose in its agenda that it would be considering the adoption of the MND at its October 14, 2009, meeting.  The adoption of the MND was plainly a distinct item of business, and not a mere component of project approval, since it (1) involved a separate action or determination by the Commission and (2) concerned discrete, significant issues of CEQA compliance and the project's environmental impact.  As an individual item of business, it had to be expressly disclosed on the agenda; it was not sufficient for the agenda to merely reference the project in general. Because the commission discussed and adopted the MND at its October 14, 2009, meeting even though that matter was not set forth on the meeting agenda, it violated the Brown Act."  (*San Joaquin Raptor*, *supra*, 216 Cal.App.4th at pp. 1176-1177, fns. omitted.)

The City[4] argues that its adoption of the CEQA exemption was a component of the agenda item awarding the franchise agreement to Athens.  But *San Joaquin Raptor* rejected that argument.  The CEQA exemption involved a separate action or determination by the City and concerned discrete significant issues of CEQA compliance.  Here the trial court agreed that the

---

[4] All further references to the "City," includes Athens, unless the content indicates otherwise.

9

CEQA exemption was a separate item of business.  It follows that the City violated the Brown Act by adopting the exemption without having listed it as an item on its agenda for at least 72 hours.

The City attempts to distinguish *San Joaquin Raptor* on the ground that it involved an MND and not a CEQA exemption.  It is true an MND involves an assessment of the environmental impacts of a project, whereas an exemption is a determination that CEQA does not apply.  But for the purposes of the Brown Act, it is a distinction without a difference.  Members of the public are just as entitled to have notice of and an opportunity to participate in a local agency's determination that a CEQA exemption applies as they are to the agency's determination that an MND should be issued.

We are required by the California Constitution to broadly construe the Brown Act to further the People's right to access to the conduct of the People's business.  (Cal. Const., art. 1, § 3, subd. (b)(1)(2).)  We would be remiss in that duty if we narrowly interpreted the Brown Act to apply to a determination that an MND is appropriate but not a determination that a project is exempt from CEQA, both are aspects of the People's business.

The City relies on a line of cases that hold CEQA does not require a public hearing for a determination that a project is exempt.  (See, e.g., *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1385.)  The cases discuss only CEQA.  They do not discuss whether the Brown Act applies.  A case is not authority for issues it does not consider.  (*Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660.)

Moreover, the Brown Act as applied to a CEQA exemption does not require a formal public hearing where the findings must be supported by substantial evidence. All the Brown Act requires is that the exemption be placed on the meeting agenda and an opportunity for the public to comment.

The City cites no language in CEQA that precludes the application of the Brown Act. In fact, our Supreme Court has stated that members of the public hold a "'privileged position" . . . in the CEQA process based on a belief that 'citizens can make important contributions to environmental protection and on notions of democratic decision-making.'" (*Concerned Citizens of Costa Mesa, Inc. v. 32nd Dist. Agricultural Assn.* (1986) 42 Cal.3d 929, 936, quoting *Selmi, The Judicial Development of the California Environmental Quality Act* (1984) 18 U.C. Davis L.Rev. 197, 215-216) That is entirely consistent with the application of the Brown Act to the CEQA process.

A finding that a project is exempt from CEQA is not a minor matter. Such a finding forecloses any analysis of the project's environmental impact. (See *Muzzy Ranch Co. v. Solano County Airport Land Use Com.*, *supra*, 41 Cal.4th at p. 380.) A finding of an exemption is as least as important to environmental protection as an MND.

The City argues that applying the Brown Act to a CEQA exemption will place an intolerable burden on local agencies. It posits that it would require basic administrative decisions such as the purchase of paperclips to be "agendized."

But the section of the Brown Act on which WM relies applies only to an item of business transacted or discussed at a regular meeting of the legislative body of a local agency. (§ 54954.2, subd. (a)(1).) The vast majority of the City's day-to-

11

day business is not transacted or discussed at a regular meeting of a legislative body. But if a local legislative body intends to vote on or discuss a CEQA exemption at a regular meeting, it will require minimal effort to include it as an agenda item. For a CEQA exemption to apply, the activity must qualify as a "project" under CEQA. Most of the City's activities would not qualify as a project because they have no potential environmental effect. (See Guidelines, § 15378(a).) Our decision will not unduly burden local public agencies.

The City argues that the City council did not vote on the exemption at the March 9, 2021, meeting. Instead, the City asserts its staff made the CEQA exemption determination long prior to the meeting.

But WM's petition alleges that approval of the CEQA exemption was expressly made by motion and voted on at the meeting. These are allegations of fact that we must assume are true on demurrer. (*Intengan v. BAC Home Loans Servicing LP*, *supra*, 214 Cal.App.4th at p. 1052.)

More importantly, the lead agency has the duty to determine whether a project qualifies for a CEQA exemption. (Guidelines, § 15061(a).) Here the City council, as the only agency involved in approving the contract, is the lead agency. The City can delegate its duty to its staff to determine whether a CEQA exemption applies. (Guidelines, §§ 15025(a)(1), 15356.) But the delegation only goes so far. The legislative body of the local agency retains the inherent power to overrule its staff's determination. Thus, the local agency makes the ultimate decision whether a CEQA exemption applies.

The City cannot avoid the Brown Act simply by delegating its duty to its staff. Where a local agency at a regular meeting

12

approves a project that is subject to a staff's determination of a CEQA exemption, it must give notice of the CEQA exemption on its agenda. The addition of words to the agenda indicating the local agency is considering a project subject to staff determination of CEQA exemption will not unduly tax a local agency's resources.

IV.

*Cure and Correct Letter*

The City contends WM's letter was inadequate.

Section 54960.1, subdivision (b) provides in part: "Prior to any action being commenced . . . the district attorney or interested person shall make a demand of the legislative body to cure and correct the action alleged to have been taken in violation of Section . . . 54954.2 The demand shall be in writing and clearly describe the challenged action of the legislative body and nature of the alleged violation."

Here WM's letter informed the City that it violated section 54954.2 by considering the CEQA exemption without describing the action in the agenda for at least 72-hours prior to the meeting. The letter clearly described the challenged action of the legislative body and the nature of the alleged violation. WM's petition alleges the City failed to respond in any way. Notably the City did not ask for clarification or further details. WM's letter substantially complied with section 54960.1, subdivision (b).

The City objects that WM's letter states, "The City Council violated the Brown Act on March 9, 2021 by voting to adopt a Notice of Exemption (NOE) . . . prior to adopting the Franchise Agreement and without adequate notice to the public . . . ." The

13

City points out that an NOE is filed, not adopted, and it was not filed until March 15, 2021.

The purpose of section 54960.1, subdivision (b) is to give the local agency notice of an alleged violation of the Brown Act so that it can avoid litigation by curing the violation. Its purpose is not to allow a local agency to avoid the consequences of Brown Act violations by launching nit-picking technical attacks on the language used in the cure and correct letter. Whether the City council technically voted to "adopt" an NOE or when the NOE was filed is beside the point. The point is that the City council voted that the project is exempt, without the public notice required by the Brown Act. WM's cure and correct letter adequately stated that point.

## V.

### *Remedy*

The City contends the proper remedy for a Brown Act violation is to void the CEQA determination, not the franchise agreement.

But our task on reviewing the sustaining of a demurrer is to determine whether petitioner stated a cause of action that entitles it to any remedy. (*Highlanders, Inc. v. Olsan* (1978) 77 Cal.App.3d 690, 697.) WM has shown that it is at least entitled to have the CEQA exemption determination declared void. We need not determine now whether it is entitled to any other relief. We leave it to the trial court to fashion the appropriate remedy in the first instance should WM prove its case.

14

## DISPOSITION

The judgment is reversed.  Costs are awarded to appellant.

<u>CERTIFIED FOR PUBLICATION.</u>

GILBERT, P. J.

We concur:

PERREN, J.*

BALTODANO, J.

---

* Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____


Remy Moose Manley, James G. Moose, Andrea K. Leisy, Nathan O. George; Law Offices of Joel Franklin and Joel Franklin for Plaintiff and Appellant.

Colantuono, Highsmith & Whatley, Holley O. Whatley, Carmen A. Brock, for Defendants and Respondents.

Manatt, Phelps & Phillips, Benjamin G. Shatz, Viral Mehta, Sigrid R. Waggener, Jennifer Lynch, for Real Party in Interest and Respondent.

16