Filed 3/26/19

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| KIMBERLY R. OLSON,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HORNBROOK COMMUNITY SERVICES DISTRICT,<br><br>    Defendant and Respondent. | C084494, C084843<br><br>  (Super. Ct. Nos. SCCVPT161089, SCCVPT161293) |
| ROGER GIFFORD,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HORNBROOK COMMUNITY SERVICES DISTRICT,<br><br>    Defendant and Respondent. | C084757, C085836, C086031<br><br>  (Super. Ct. Nos. SCCVPT161088, SCCVPT161292, SCCVPT170323) |

---

\* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

APPEALS from judgments of the Superior Court of Siskiyou County, Karen Dixon and Laura J. Masunaga, Judges.  Reversed in part and affirmed in part.  APPEALS from judgments of the Superior Court of Siskiyou County, Frank Dougherty, Judge.  (Retired judge of the Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).

Kimberly R. Olson, in pro. per., for Plaintiff and Appellant, Kimberly R. Olson.

Roger Gifford, in pro. per., for Plaintiff and Appellant, Roger Gifford.

Kirsher, Winston & Boston and Robert D. Winston for Defendant and Respondent.

These appeals arise from five judgments of dismissal entered against plaintiffs Roger Gifford and Kimberly Olson (collectively plaintiffs) on their separately initiated litigation under the Ralph M. Brown Act[1] (the Act) against the Hornbrook Community Services District (the District) and the resulting costs and attorney fee awards to the District.  They contend the District's Board of Directors (the Board) violated the Act by failing to adequately describe several items it acted on over the course of three District meetings and for unreasonably limiting public comment.  Plaintiffs seek to invalidate the Board's resulting actions pursuant to section 54960.1, but also to obtain a declaration to determine the applicability of the Act to the Board's actions pursuant to section 54960.  The District contends that because it substantially complied with the Act, plaintiffs are barred from relief.  We agree with this standard but only for causes of action under section 54960.1 and not for those under section 54960.

On the merits of plaintiffs' claims, we agree the court erred in dismissing all but one of their complaints, and we further agree the court erred in awarding costs and attorney fees to the District in all cases.

---

[1]     Government Code section 54950 et seq.  Further section references are to the Government Code unless indicated otherwise.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

I

*August 2016 Agenda And Resulting Litigation*

The District timely posted its agenda for its August 16, 2016, meeting. As relevant here, item 5 appeared as follows: "**RE: State Compensation Insurance Fund. Discussion, direction and possible motion to approve payment in the amount of $285.75 for quarterly premium due 8/25/16 for rating period 7/29/16 - 7/29/17.**" At the August meeting, when that item "came up for discussion, [the District's] Secretary Patricia Slote announced that since the time the agendas for the meeting were posted, she had received additional communications from the State Compensation Insurance Fund representatives, indicating that the prior billing was being superseded by a letter (copies of which were not provided to the other Board members, or to the public), which in turn demanded additional money be paid in an amount differing from that on the agenda. No explanation as to why the amount had been changed, or any discussion about any investigation into the billing practices and/or changes was forthcoming from Slote, who instead insisted (over objections from the public) that the [District] approve the new demand for payment without any review, or other formal action by the [District]." (Fn. omitted.)

The day after the meeting, plaintiffs each submitted a cure and correct notice and cease and desist letter to the District and Slote. Receiving no response, plaintiffs initiated separate litigation on September 19, 2016, by filing nearly identical complaints alleging the District's Board "improperly discussed and considered the letter produced by Slote at the meeting, and thereafter approved an improperly-made motion to pay the amount demanded in the letter, rather than the billing set forth in the agenda" thus violating the Act.

---

[2]     This opinion is consolidated for purposes of decision only.

The District sent plaintiffs a letter purporting to comply with the meet and confer requirements of Code of Civil Procedure section 430.40. Plaintiffs both refused to communicate with the District's counsel because the Board had not yet retained him at a meeting with his employment on the agenda. Indeed, counsel indicated that he had not yet been retained by the Board but was waiting for the District's next meeting for approval of his representation.

The District, through its counsel, later filed a notice of inability to meet and confer, entitling it to an additional 30 days to respond to plaintiffs' summonses. (Code of Civ. Proc., § 430.41, subd. (a)(2).) Plaintiffs each moved to strike the District's notices arguing counsel had not yet been retained by the Board, and he thus lacked standing to file anything in the matter. Plaintiffs further argued counsel's efforts to meet and confer were insufficient because he did not attempt to do so in person or by telephone as the statute required. The court denied plaintiffs' motions. Olson later moved the court to reconsider the denial of her motion to strike.

The District filed a general demurrer to each complaint arguing the description in the agenda was sufficient under the Act, which required only substantial compliance. The court agreed and sustained the demurrers without leave to amend and found both of plaintiffs' complaints clearly frivolous and lacking in merit. It also denied Olson's motion to reconsider her motion to strike because it was rendered moot by the dismissal of her complaint. The court awarded the District its costs and reasonable attorney fees pursuant to section 54960.5, to be determined at a later hearing.

II

*September 2016 Agenda And Resulting Litigation*

The District timely posted its agenda for the September 20, 2016, meeting. As relevant here, the consent agenda included as item 4 to "[a]pprove bills and authorize signatures on Warrant Authorization Form for" various bills listed in the agenda, not including an AT&T bill. The list also included a payment to Clint Dingman for 32.45

4

hours of work totaling an unspecified amount. At the September meeting, "when the consent agenda came up for discussion, [the District] Secretary Patricia Slote announced that since the time the agendas for the meeting were posted, she had received an additional bill from AT&T that she wanted to 'add' to the agenda as a consent item. When the item of payment of wages to [District] employee Clint Dingman came up, Secretary Slote simply filled in an amount on the blank space of the agenda without any motion, or vote, to do so. Furthermore, it was pointed out by the public at the meeting . . . that the 'timesheet' for Clint Dingman included 3 hours of pay (at 15.00/hr) for a 'meeting with Bob/Pat' on '9/15/16', which meeting had never been approved by any action of the [District], and indeed, no such meeting had ever been agendized at any previous meeting." (Fn. omitted.)

The day after the meeting, plaintiffs each submitted a cure and correct notice and cease and desist letter to the District and Slote. Receiving no response, plaintiffs initiated separate litigation on November 3, 2016, by filing nearly identical complaints alleging the Board "improperly discussed and considered the late AT&T bill produced by Slote at the meeting, and thereafter approved an improperly-made motion to pay the amount demanded in the AT&T bill, which was not set forth in the agenda. Additionally, the [District] failed to state the amount of payment to be made to Clint Dingman, and then at the meeting voted to approve 3 hours of additional time for employee Clint Dingman for a meeting with Secretary Slote, and President Puckett, which meeting, and payment to Dingman therefor, had never been considered or approved by the Board at any public meeting, and had also not been listed on the September 20, 2016 agenda," thus violating the Act.

The District attempted to meet and confer with plaintiffs; however, both refused to communicate with the District's counsel as he had not been retained for the matter by the Board at a meeting. The District filed a notice of inability to meet and confer, entitling it to an additional 30 days to respond to plaintiffs' summonses. (Code of Civ. Proc.,

5

§ 430.41, subd. (a)(2).) Plaintiffs each filed motions to strike the District's notices arguing counsel's efforts to meet and confer were insufficient because he did not attempt in person or by telephone as the statute required.

The District later filed a general demurrer to each complaint arguing the descriptions in the agenda regarding the AT&T bill and the payment to Dingman were sufficient under the Act. Following Olson's opposition, the court sustained the District's demurrer against her. The court also found Olson's action frivolous and lacking in merit, thus allowing the District to collect attorney fees.

Unlike Olson, Gifford did not oppose the District's demurrer but filed a first amended complaint and then a second amended complaint. The District moved to strike both as being untimely and filed without leave from the court. The District also filed a demurrer to Gifford's second amended complaint. Gifford then moved to amend his original complaint.

In a written ruling, the court granted the District's motions to strike Gifford's first and second amended complaints finding both were untimely and unauthorized. The court then took judicial notice of the findings made in Olson's related case, including that the action was lacking in merit. The court sustained the District's demurrer to the original complaint without leave to amend. It found Gifford's filing of the first and second amended complaints were for the purposes of frustrating the court's process and that his action was lacking in merit. The court also allowed the District to recover its costs and reasonable attorney fees.

Following entry of judgment, the District filed a memorandum of costs and later moved for attorney fees. Gifford sought to strike the District's memorandum of costs for the same reasons he sought to strike the District's demurrer -- that the District's attorney had not properly been retained by the Board nor did the District comply with Code of Civil Procedure section 430.41 when attempting to meet and confer with him. When Gifford presented his motion to strike for filing, he also presented a request to waive

6

court fees.  The court denied Gifford's request stating his form was incomplete and returned his motion to strike the District's memorandum of costs.  Gifford's motion to strike was eventually filed and denied.  It is unclear from the record whether Gifford received a fee waiver to file his motion or whether he paid the filing fee to do so.

III

*January 2017 Agenda And Resulting Litigation*

The District timely posted its agenda for its January 24, 2017, meeting.  As is relevant here, item 2 allowed for public comment at the start of the meeting "on any matter within the jurisdiction of the [District] that is NOT ON THE AGENDA. . . .  Any person wishing to address the [District] on an item ON THE AGENDA will be given the opportunity at that time."  The agenda also contained a consent agenda, which included as item 4 to "[a]pprove bills and authorize signatures on Warrant Authorization Form for District expenses received through January 24, 2017."  The agenda did not list specific bills to be paid or warrants to be authorized.  At the January 2017 meeting, "objection was made by members of the public as to the limitations imposed upon the public comment topics as being in violation of the Brown Act . . . , specifically, that persons wishing to comment on agendized items were required to sit through the entire meeting until those items came up for discussion, rather than being able to speak their piece [*sic*] and then leave at the beginning of the meeting. . . .  Additionally, a specific objection was made when the consent agenda came up for discussion on the basis that ***none*** of the individual items to be transacted or discussed by the [District] as those things comprising (4b) were listed on the agenda . . . , which constituted a violation" of the Act.  In response to the public's objection, Slote indicated she did not believe her conduct violated the Act and that the Board would continue with its practice regarding public comment and the consent agenda into the future.

Nearly a month after the meeting, Gifford submitted a cure and correct notice and cease and desist letter to the District and Slote.  Receiving no response, Gifford initiated

7

suit by filing a complaint alleging the District "improperly restricted the topics of public comment, discussed and considered multiple, non-agendized, non-described items supposedly under the rubric of 'consent calendar', and thereafter approved an improperly-made motion to pay various amounts relating to numerous of the non-agendized consent items to persons and/or entities in amounts that were also not described anywhere in the agenda." (Fn. omitted.)[3]

The District filed a general demurrer to Gifford's complaint arguing the description contained in the consent agenda was sufficient and that the Board complied with the Act concerning public comment. On October 19, 2017, the court sustained the District's demurrer and granted its request for costs and reasonable attorney fees. The minute order reflecting these decisions provides "[t]he [d]emurrer is sustained without leave to amend" and "[t]he [c]ourt grants the requests for attorney's fees for the [District]." It does not provide any reasons for its decision or delegate responsibility to prepare a judgment or order regarding the rulings. On November 16, 2017, Gifford submitted the judgment, which the court entered that same day. Gifford immediately appealed.

Following entry of judgment and Gifford's notice of appeal, the District submitted a proposed order explaining the court's decision and directing entry of judgment. It was returned because judgment had already been entered. The District later requested the trial court enter the proposed order nunc pro tunc as of the same date of the judgment filed by Gifford or to vacate entry of judgment pending entry of the order.

---

[3] The record does not contain Gifford's originally filed complaint, but it does contain the first amended complaint. Because of this omission, it is difficult to discern when Gifford initiated litigation and whether it was within the statutory period provided by the Act. (§§ 54960.1, 54960.2.) But, because the District does not argue Gifford's claim fails on this basis, we assume he met the requirements set forth in the Act in this respect, at least at this stage of the proceedings.

In December, Gifford was adjudged a vexatious litigant.

In early January 2018, the trial court filed the District's prepared order sustaining the demurrer to the complaint and awarding attorney fees. It was amended nunc pro tunc to the date of entry of judgment -- November 16, 2017.

DISCUSSION

I

*The Brown Act*

We begin with a brief description of the Act and the provisions relevant to plaintiffs' claims before addressing their particular concerns.

The Act is intended to ensure that the deliberations and actions of the governing bodies of local agencies are open and public and that provision is made for meaningful public access to their decisionmaking. (§ 54950.) To that end, the Act requires the meetings of such bodies to be open to the public, held on a regular schedule, and conducted in accordance with an agenda available in advance of the meeting. (§§ 54953, 54954, 54954.2.) Conversely, the Act prohibits action on items not placed on the agenda and severely restricts the type of actions such bodies can take in private session. (§§ 54954.2, 54956.7-54957.)

Section 54952.2, subdivision (a) defines a "meeting" for purposes of the Act as "any congregation of a majority of the members of a legislative body at the same time and location, . . . to hear, discuss, deliberate, or take action on any item that is within the subject matter jurisdiction of the legislative body." Meetings, as so defined, are prohibited unless they are "open and public." (§ 54953.) For all legislative bodies of more than three members, a prohibited nonpublic meeting requires at least three persons. In fact, two-person "meetings" are given statutory protection by section 54952.2, subdivision (c), which provides, "Nothing in this section shall impose the requirements of this chapter upon any of the following:  [¶]  (1) Individual contacts or conversations between a member of a legislative body and any other person."

9

The agenda must contain "a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session. A brief general description need not exceed 20 words." (§ 54954.2, subd. (a)(1).) Importantly, with limited exceptions, "[n]o action or discussion shall be undertaken on any item not appearing on the posted agenda." (*Id.*, subd. (a)(2)(E)(3).)

Additionally, "[e]very agenda for regular meetings shall provide an opportunity for members of the public to directly address the legislative body on any item of interest to the public, before or during the legislative body's consideration of the item, that is within the subject matter jurisdiction of the legislative body, provided that no action shall be taken on any item not appearing on the agenda unless the action is otherwise authorized by subdivision (b) of Section 54954.2." (§ 54954.3, subd. (a).) This language has been construed to mean there must be a period of time provided for general public comment on any matter within the subject matter jurisdiction of the legislative body, as well as an opportunity for public comment on each specific agenda item before or during its consideration by the legislative body. (*Chaffee v. San Francisco Library Commission* (2004) 115 Cal.App.4th 461, 468-469.)

II

*The Demurrers*

Plaintiffs raise several issues related to the trial court's sustaining of the District's demurrers. They both attack the trial court's denial of their motions to strike the District's notices of inability to meet and confer in the litigation resulting from their challenges to the August and September 2016 agendas. They argue the District was not entitled to an extension of time in which to file its demurrers and as a result the trial court lost jurisdiction over the demurrers.[4] Plaintiffs also contend the trial court erred in

---

[4] Olson also challenges the trial court's denial of her motion to reconsider her motion to strike in the litigation resulting from her challenge to the August 2016 agenda.

10

sustaining the District's demurrers because all of their complaints stated causes of action under section 54960.1, and could be amended to state causes of action under section 54960 of the Act. We turn to these contentions now.

A

*We Need Not Address Plaintiffs' Challenges To The Denial Of Their Motions To Strike Or Olson's Challenge To The Denial Of Her Motion For Reconsideration*

Code of Civil Procedure section 430.41 provides, in relevant part: "(a) Before filing a demurrer pursuant to this chapter, the demurring party shall meet and confer in person or by telephone with the party who filed the pleading that is subject to demurrer for the purpose of determining whether an agreement can be reached that would resolve the objections to be raised in the demurrer. . . . [¶] . . . [¶] (2) [I]f the parties are not able to meet and confer at least five days prior to the date the responsive pleading is due, the demurring party shall be granted an automatic 30-day extension of time within which to file a responsive pleading . . . ."

Most importantly, Code of Civil Procedure section 430.41 does not contain any penalties for the failure to follow the meet-and-confer process set forth in subdivision (a)(1). Indeed, subdivision (a)(4) of that section provides that "[a]ny determination by the court that the meet and confer process was insufficient shall not be grounds to overrule or sustain a demurrer." Thus, even if the District did not comply with the meet-and-confer requirements, we do not agree with plaintiffs that the consequence of that failure is for the court to lose jurisdiction over the pleadings.[5]

---

[5] Plaintiffs also argue their motion to strike should have been granted because the District's purported counsel had not been retained by the Board at a meeting with that item on the agenda and thus had no standing to meet and confer on behalf of the District or file pleadings in the matter. This argument lacks merit. Plaintiffs do not seek to nullify the Board's alleged unlawful action of retaining counsel, nor could they since they have failed to comply with the Act in that regard. (See § 54960.1) For our purposes, " ' "[t]he act of the attorney in entering the appearance of a defendant carries with it a

11

For similar reasons we need not address Olson's contention that the trial court erred by denying her motion for reconsideration in the litigation resulting from her challenge to the August 2016 agenda. Olson argues the court erred because a different judge than the one who heard her motion to strike heard and ruled upon her motion to reconsider the same. As an initial matter, we note Olson's motion for reconsideration was not denied on the merits but found moot because her case was dismissed. This was proper because, as described, even if the District failed to meet and confer, that failure would not affect the court's ruling on the demurrer. Moreover, Olson cannot show a more favorable outcome would have resulted had the judge who heard her original motion to strike also ruled on her motion to reconsider the same. (*California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.* (2007) 148 Cal.App.4th 682, 688 [" 'When the trial court commits error in ruling on matters relating to pleadings, procedures, or other preliminary matters, reversal can generally be predicated thereon only if the appellant can show resulting prejudice, and the probability of a more favorable outcome, *at trial*' "].)

B

*Plaintiffs' Complaints Challenging The August And*
*September 2016 Agendas State Causes Of Action*

The purpose of a demurrer is to test whether, as a matter of law, the properly pleaded facts in the complaint state a cause of action under any legal theory. (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) On appeal from a judgment dismissing the complaint after the trial court has sustained a demurrer without leave to amend, we assume the truth of all facts properly pleaded, as well as facts of which the trial court properly took judicial notice. (*Ibid*.) We do not assume the truth of

---

presumption of due authority upon his part to do so." ' " (*Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 459; see Code Civ. Proc., § 283.)

12

contentions, deductions, or conclusions of law. (*Ibid*.) With respect to the Act, we begin by noting that where, as is the case here, the facts are undisputed, we determine a local agency's compliance de novo. (*Castaic Lake Water Agency v. Newhall County Water Dist.* (2015) 238 Cal.App.4th 1196, 1204.)

We review the trial court's decision denying leave to amend for abuse of discretion. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 273-274.) The plaintiff has the burden of proving there is a reasonable possibility an amendment would cure the defect. (*Id*. at p. 274.) Where there is no reasonable possibility the plaintiff can cure a defect in a complaint with an amendment, an order sustaining a demurrer without leave to amend is not an abuse of discretion. (*Id*. at pp. 273-274.)

Plaintiffs' complaints purport to allege causes of action under section 54960.1; however, they assert in their appellate briefing that their complaints state causes of action under section 54960 as well and could be amended accordingly.

1

*Section 54960.1*

Section 54960.1, subdivision (a) provides that an interested person may sue the legislative body of a local agency by mandamus or injunction to determine whether an action taken by that body violated certain provisions of the Act, and as a consequence is null and void. Section 54960.1 limits its remedy to actions that violated the Act's mandate for open and public meetings (§§ 54953, 54956, 54956.5) and its agenda posting requirements (§§ 54954.2, 54954.5, 54954.6). " 'To state a cause of action, a complaint based on [section] 54960.1 must allege: (1) that a legislative body of a local agency violated one or more enumerated Brown Act statutes; (2) that there was "action taken" by the local legislative body in connection with the violation; and (3) that before commencing the action, plaintiff made a timely demand of the legislative body to cure or correct the action alleged to have been taken in violation of the enumerated statutes, and

13

the legislative body did not cure or correct the challenged action.' " (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 684.)

Subdivision (d)(1) of section 54960.1 provides that any action alleged to have violated these specified sections shall not be determined to be null and void if the action was taken in substantial compliance with that section. Further, "[e]ven where a plaintiff has satisfied the threshold procedural requirements to set aside an agency's action, Brown Act violations will not necessarily 'invalidate a decision. [Citation.] [Plaintiffs] must show prejudice.' " (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist*. (2006) 139 Cal.App.4th 1356, 1378.)

Plaintiffs contend the District's August 2016 agenda description of the payment to the State Compensation Insurance Fund was inadequate because the amount approved and paid was not the amount provided for in the agenda. They also contend the District's September 2016 agenda violated the Act because the consent agenda's description did not include an AT&T bill the Board approved at the meeting and because the District approved payment to Dingman in an amount not indicated in the agenda and for a meeting with members of the Board that had not been previously agendized and approved. Plaintiffs do not clearly delineate separate causes of action based on their factual allegations, and in that absence we construe their complaints to allege a single cause of action. As for the District's January 2017 agenda, Gifford contends it violated the Act by failing to sufficiently describe all items acted upon in the consent agenda and for unduly limiting public comment. This also appears as a single cause of action.

The District argues that plaintiff's challenges to the August and September 2016 agendas must fail because the District complied with the Act by providing a general description of the item the District was to act upon and, in any event, it substantially complied with the agenda requirements of the Act preventing nullification of its actions under section 54960.1. The District argues the same as to Gifford's challenge to the

14

January 2017 consent agenda and argues it complied with the Act's public comment requirements.

We agree with the District that plaintiffs have failed to state a cause of action under section 54960.1 in their complaints challenging the August 2016 agenda and the January 2017 agenda. We disagree as to the complaints challenging the September 2016 agenda.

As an initial matter, we address Gifford's challenge to the District's public comment period as described in the January 2017 agenda because this challenge is not cognizable under section 54960.1.[6] That section only allows for nullification of an action if the legislative body violated the open and public meeting provisions (§§ 54953, 54656, 54956.5) or the notice requirements (§§ 54954.2, 54954.5, 54954.6) of the Act. It does not offer a remedy for actions taken following a violation of section 54954.3 governing the public comment period required at local agency meetings. (§ 54960.1, subd. (a).)[7]

The rest of plaintiffs' claims pertain to the District's obligation to provide "a brief general description of each item of business to be transacted or discussed at the meeting" as governed by section 54954.2, which does appear in section 54960.1 and is tested for

---

[6]     Although the parties did not address whether Gifford can challenge the public comment period under section 54960.1, "we are nonetheless free to consider the matter since it involves an issue of law on undisputed facts which may be raised for the first time on appeal." (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6.)

[7]     Gifford argues the trial court improperly filed an order articulating the reasons for the judgment dismissing his complaint challenging the January 2017 agenda because the order was filed after he filed his notice of appeal, which divested the trial court of jurisdiction. We need not address this issue now as we do not rely on the trial court's statement of reasons in our de novo review upholding its decision. We review only the ruling and not its rationale. (*California Aviation, Inc. v. Leeds* (1991) 233 Cal.App.3d 724, 731.) We will address this issue in connection with Gifford's challenge to the court's attorney fee award and its related statement of reasons. (See *Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1121.)

15

substantial compliance before any action can be nullified.[8]  (§ 54960.1, subd. (d)(1).)
" ' " 'Substantial compliance . . . means actual compliance *in respect to the substance essential to every reasonable objective of the statute*.' " ' " (*San Diegans for Open Government v. City of Oceanside* (2016) 4 Cal.App.5th 637, 643.)  To fulfill the Act's objective, "agenda drafters must give the public a fair chance to participate in matters of particular or general concern by providing the public with more than mere clues from which they must then guess or surmise the essential nature of the business to be considered by a local agency." (*Ibid*.)

For example, "in *Moreno*[*v. City of King* (2005) 127 Cal.App.4th 17, 25], although a city was considering taking disciplinary action against its finance director, including possible termination, its agenda item was inadequate because it merely stated that in closed session the city would consider:  ' " Per Government Code Section 54957:  Public Employee (employment contract)." ' [Citation.]  In finding this failed to give notice to either the public, or the finance director, that the council was considering disciplining or terminating him, the court stated:  'It was undisputed that at least a quarter of the meeting was actually devoted to a discussion of [the finance director] and whether to terminate him . . . .  The agenda's description provided no clue that the dismissal of a public employee would be discussed at the meeting.' [Citation.]  Importantly, the court went on to point out how easily the city council could have met the requirements of the Ralph M. Brown Act:  '[A]n agenda that said simply "Public Employee Dismissal" would have provided adequate public notice of a closed session at which the Council would consider

---

[8]      Plaintiffs argue the substantial compliance test only applies to closed session agenda items.  Not so.  While the section of the Act pertaining to closed session agenda items (§ 54954.5) provides examples of substantial compliance with that section, the doctrine extends to items agendized for open session as well when a party seeks to nullify that action pursuant to section 54960.1.  (§ 54960.1, subd. (d)(1).)

[the finance director's] dismissal.' " (*San Diegans for Open Government v. City of Oceanside*, *supra*, 4 Cal.App.5th. at pp. 643-644.)

"On the other hand, however, it is also clear that so long as notice of the essential nature of the matter an agency will consider has been disclosed in the agency's agenda, technical errors or immaterial omissions will not prevent an agency from acting. In *Castaic*[ *Lake Water Agency v. Newhall County Water Dist.*], *supra*, 238 Cal.App.4th at pages 1206-1207, a water agency published an agenda which stated that its board of directors would conduct a conference with its legal counsel, in closed session, and 'discuss potential litigation.' The agenda erroneously cited section 54956.9, subdivision (c), which defines 'litigation' as including any adjudicatory proceeding; the agenda should have cited section 54956.9, subdivision (d)(4), which, in particular, permits closed sessions when an agency is 'deciding whether to initiate litigation.' In finding that the agency's discussion of and decision to initiate litigation was valid and that it had substantially complied with the Ralph M. Brown Act, the court stated: '[Plaintiff's] argument is hypertechnical and elevates form over substance. The given notice plainly advised the members of the public that on March 14, 2013, [the board] would be meeting with its legal counsel, in closed session, to discuss potential litigation in two cases. The citation in the given notice to subdivision (c) instead of subdivision (d)(4) of section 54956.9 could not possibly have misled or confused anyone.' " (*San Diegans for Open Government v. City of Oceanside*, *supra*, 4 Cal.App.5th at pp. 644-645.)

Plaintiffs' challenges to the August 2016 agenda meets a similar fate as the challenge in *Castaic Lake Water Agency* because it communicated the essential nature of the Board's action -- to discuss and approve payment to the State Compensation Insurance Fund -- and any person interested in that payment would know it would be acted upon at the District's August meeting. The fact that the amount of the payment was listed incorrectly in the agenda is a technical error. Those interested in the payment had

17

notice that it was going to be discussed and acted upon at the District's August meeting and could attend the meeting and participate in the Board's action regardless of the amount to be paid. Moreover, plaintiffs do not allege the amount the District eventually paid. Nor do they allege the amount was a significant increase over that which was described in the agenda. As a result, plaintiffs' allegations lead us to conclude the essential nature of the Board's action was communicated and did not prevent public participation that would have otherwise occurred had the amount been accurately described. The incorrect amount could not possibly have misled or confused anyone as to who the District was making a payment to and for what. Thus, plaintiffs have not stated a cause of action under section 54960.1 in their complaints challenging the District's August 2016 agenda.

Skipping to Gifford's complaint challenging the consent agenda description in the January 2017 agenda, this challenge also lacks merit. Gifford argues the description, "Approve bills and authorize signatures on Warrant Authorization Form for District expenses received through January 24, 2017," does not substantially comply with the Act because it does not list the individual items to be discussed and acted upon. We disagree because the description leaves no confusion as to the essential nature of the District's action, which was to approve bills and authorize signatures for all expenses of the District received through January 24, 2017. The January 2017 agenda indicated the District's expenses would be approved in a single action; those interested in the District's expenses would know from the agenda description that they needed to attend the meeting to participate in that discussion and action. Accordingly, Gifford has not stated a cause of action under section 54960.1 in his complaint challenging the District's January 2017 agenda.

As to plaintiffs' complaints challenging the District's September 2016 agenda, they allege the District's description in the consent agenda to "[a]pprove bills and authorize signatures on Warrant Authorization Form for:" nine specific payments that did

18

not include an AT&T bill did not substantially comply with the Act.  We agree.  Whereas an interested person would know the Board would approve any bill received the previous month, including an AT&T bill, by reading the January 2017 agenda, the same cannot be said of the description in the September 2016 agenda.  There, the Board indicated it would be approving a specific list of payments.  The agenda does not indicate these were regular monthly payments or that they were part of the bills received the previous month.  Instead, the agenda provides a specific and exhaustive list of payments to be approved.  Those interested in payments not listed would not know to attend the September 2016 meeting so they could comment on the subject.

The District argues that even if the description in the September 2016 agenda did not substantially comply with the Act, the Board properly amended the agenda and took action pursuant to section 54954.2, subdivision (b)(2).  We find it appropriate to articulate our role at this stage of the proceedings.  A demurrer tests only whether, as a matter of law, the properly pleaded facts in the complaint state a cause of action under any legal theory.  (*Intengan v. BAC Home Loans Servicing LP*, *supra*, 214 Cal.App.4th at p. 1052.)  "Although a general demurrer does not ordinarily reach affirmative defenses, it 'will lie where the complaint "has included allegations that clearly disclose some defense or bar to recovery." ' "  (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191.)  Unlike plaintiffs' other complaints in regard to substantial compliance, plaintiffs' complaints challenging the August 2016 agenda do not disclose the defense the District seeks to prevail upon.

Section 54954.2, subdivision (b)(2) provides that "the legislative body may take action on items of business not appearing on the posted agenda . . . [¶] . . . [¶] (2) [u]pon a determination by a two-thirds vote of the members of the legislative body present at the meeting, . . . that there is a need to take immediate action and that the need for action came to the attention of the local agency subsequent to the agenda being posted . . . ."  While plaintiffs' complaints provide that Slote received the AT&T bill after the agenda

was posted and the minutes of the meeting attached to plaintiffs' complaints indicate a vote was held and unanimously approved by the four Board members present, the complaints do not disclose that an immediacy determination was made nor the reasons supporting that determination. Thus, we cannot affirm the trial court based on the District's asserted defense.

Similarly, we cannot affirm the trial court's decision based on plaintiffs' failure to allege prejudice. While a finding of prejudice is required before nullifying the Board's action (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.*, *supra*, 139 Cal.App.4th at p. 1378), its allegation is not necessary to state a cause of action under section 54960.1 (see *Bell v. Vista Unified School Dist.*, *supra*, 82 Cal.App.4th at p. 684). Plaintiffs' complaint satisfies the purposes of our inquiry on appeal following a demurrer. The prejudice determination is better left for a later proceeding after the facts can be ascertained. Thus, plaintiffs' complaints challenging the September 2016 agenda each state a cause of action under section 54960.1.[9]

---

[9] Plaintiff's complaints allege but one cause of action under section 54960.1 with many factual allegations supporting that cause of action. Because we find the demurrer should have been overruled based on some of those factual allegations, we need not address the sufficiency of the other factual allegations contained in the complaints, namely the allegations involving the payment to Dingman. (See *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1167 ["a general demurrer may not be sustained, nor a motion for judgment on the pleadings granted, as to a portion of a cause of action," but that portion may be attacked by filing a motion to strike].)

20

## 2

### *Section 54960*[10]

Plaintiffs contend the trial court abused its discretion by failing to grant them leave to amend following the dismissal of their complaints challenging the District's August 2016 agenda and the dismissal of Gifford's complaint challenging the January 2017 agenda. They argue their complaints state causes of action under section 54960 of the Act. We agree but only as to plaintiffs' challenges to the August 2016 agenda.

Section 54960, subdivision (a) provides an "action by mandamus, injunction, or declaratory relief [may be commenced] for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to ongoing actions or threatened future actions of the legislative body, or to determine the applicability of this chapter to past actions of the legislative body, subject to Section 54960.2 . . . ."[11] We

---

[10]  Because we concluded the demurrers should have been overruled as to plaintiffs' complaints challenging the September 2016 agenda, we need not address plaintiffs' contentions that those complaints can be amended to state causes of action under sections 54960 and 54960.2.

[11]  "In 2012 the Legislature added section 54960.2 and inserted a reference to this new statute in section 54960 of the Government Code. (Stats. 2012, ch. 732, §§ 1, 2.) The new statute made the right to sue for a violation of the Brown Act contingent upon the prospective plaintiff first submitting a cease and desist letter to 'the legislative body being accused of the violation.' (Gov. Code, § 54960.2, subd. (a)(1).) If that body did not take formal action as required by the statute within a specified period of time, the individual may file suit. (Gov. Code, § 54960.2, subd. (c).)" (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 165, fn. 15.) It is undisputed that plaintiffs complied with this requirement in all of their cases. We note that compliance with section 54960.2 is required prior to filing suit alleging violation of section 54960 with respect to a past action of a legislative body and that compliance with section 54960.2 is not required prior to filing suit alleging ongoing or future violations of the Act. (See *Center for Local Government Accountability v. City of San Diego* (2016) 247 Cal.App.4th 1146, 1156.) Plaintiffs allege all of their causes of action constitute both types of violations -- past and ongoing/future. Because they complied with section 54960.2, however, we need not

21

will begin by addressing whether plaintiffs' complaints challenging the August 2016 and January 2017 agenda descriptions state causes of action under this section before addressing Gifford's contention regarding the District's public comment.

As noted, the Act requires the agenda to contain "a brief general description of each item of business to be transacted or discussed at the meeting, including items to be discussed in closed session. A brief general description need not exceed 20 words." (§ 54954.2, subd. (a).) The District contends its descriptions of the challenged actions comply with the Act, which merely requires agenda descriptions to substantially comply with the Act.

The problem with the District's argument is that the cases it cites for this proposition involve causes of action under section 54960.1 seeking to nullify prior legislative actions (see *San Diegans for Open Government v. City of Oceanside*, *supra,* 4 Cal.App.5th at pp. 642-643) or the description of closed session items (see *Castaic Lake Water Agency v. Newhall County Water Dist.*, *supra*, 238 Cal.App.4th at pp. 1204-1205). These sections of the Act explicitly provide a substantial compliance safe harbor. (§§ 54954.5, 54960.1, subd. (d)(1).) Similar language is missing from section 54960 as a condition for granting relief.

Neither can we read into section 54960 that substantial compliance with the Act would bar a prospective plaintiff from declaratory or injunctive relief.[12] In *Regents of*

_____

distinguish which causes of action concern past conduct versus those that concern ongoing/future conduct.

[12] As it is with the construction of all statutes, "we are guided by settled principles of statutory interpretation. 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.]' [Citation.] To determine this intent, we begin by examining the words of the statute. [Citation.] We must follow the construction that 'comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.] Further, we must read every statute, ' "with reference to the

22

*University of California*, our Supreme Court analyzed the Bagley-Keene Act's provision allowing for nullification of a state action taken in violation of that act. (*Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 527, superseded by statute on other grounds as recognized in *Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 915; see § 11130.3.) Like the Brown Act, the Bagley-Keene Act allows for nullification of an action "but only if: . . . the action was not in substantial compliance with the requirements. [¶] It follows, therefore, that, in enacting section 11130.3, the Legislature had as its purpose to authorize the nullification and voidance of an action taken by a state body in violation of the [Bagley-Keene Act's] notice or open-and-public-meeting requirement, but only under strict conditions. Its purpose evidently arose as it struck a balance between two, at least potentially conflicting, objectives -- to permit the nullification and voidance of certain actions, but not to imperil the finality of even such actions unduly. It accordingly chose to craft a powerful weapon, but to restrict its range." (*Regents of University of California*, at p. 527.)

In section 54960, the Legislature has not crafted nearly as powerful a weapon as it did in section 54960.1. Instead, it crafted a mechanism for enforcement of the Act, authorizing citizens to obtain a declaration and injunction from a court to force his or her local agency to comply with the Act in the future and admit when it has not complied with the Act in the past. (§§ 54960, 54960.2.) Indeed, "[i]t seems evident that the state's interest in self-governance extends to designing a system of enforcement. It is not unusual for the state to authorize citizen enforcement of state-adopted rules governing how the state and its subdivisions will conduct the public's business. Indeed, citizen actions may be authorized precisely because there may be particular procedures with which a subordinate public agency is reluctant to comply. (See Gov. Code, § 11130

entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Chaffee v. San Francisco Library Commission*, *supra*, 115 Cal.App.4th at pp. 467-468.)

23

[action to enforce state-entity open meeting law]; *id*., § 54960, subd. (a) [action to enforce local-entity open meeting law]; see also Code Civ. Proc., § 1094.5 [administrative mandamus].)" (*Friends of the Eel River v. North Coast Railroad Authority* (2017) 3 Cal.5th 677, 731.)

"The Act . . . serves to facilitate public participation in all phases of local government decisionmaking and to curb misuse of the democratic process by secret legislation by public bodies." (*Golightly v. Molina* (2014) 229 Cal.App.4th 1501, 1511.) "There has been a long and vigorous battle fought against secrecy in government. (See, e.g., Gov. Code, § 54950 et seq.; [Citations.]) It is now the rule that local governing bodies, elected by the people, exist to aid in the conduct of the people's business, and thus their deliberations should be conducted openly and with due notice with a few exceptions . . . ." (*Carlson v. Paradise Unified Sch. Dist.* (1971) 18 Cal.App.3d 196, 199.)

The Act's statement of intent provides: "In enacting this chapter, the Legislature finds and declares that the public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people's business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly. [¶] The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created." (§ 54950; Stats.1953, ch. 1588, p. 3270, § 1.) "[T]he Brown Act is a remedial statute that must be construed liberally so as to accomplish its purpose." (*Epstein v. Hollywood Entertainment Dist. II Business Improvement Dist.* (2001) 87 Cal.App.4th 862, 869.) Based on the plain language of the statutes and these governing policies, we conclude that a local agency's substantial compliance with the Act does not bar a plaintiff from recovery under section 54960.

The District argues this is an absurd result because the Board would be prevented from taking any action on an item not exactly described in the agenda. Not so. The Act does not require a local agency to describe the exact action it will take in its agenda, but requires the local agency to *generally* describe the "item of business to be transacted or discussed." (§ 54954.2, subd. (a).) Here, the District bound itself to the notice it provided to the public in its August 2016 agenda, which was to approve a $285.75 payment to the State Compensation Insurance Fund. While this description substantially complied with the Act and the Board's action cannot be nullified, we cannot say it complied with the Act as contemplated in section 54960 because the local agency took an action different than what it notified the public it would take. Those interested in this item would know to attend the August 2016 meeting to participate in the Board's action; however, those interested in the particulars of the Board's action may be persuaded not to attend the meeting in reliance on the Board's assurance of the scope of the action it would take. Accordingly, plaintiffs have stated a cause of action in their complaints challenging the District's August 2016 agenda.

We, however, agree with the District that Gifford's complaint challenging the January 2017 agenda does not state a cause of action under section 54960. As it pertains to the consent agenda, we conclude the description provided complied with the Act. The agenda described that the Board would "[a]pprove bills and authorize signatures on Warrant Authorization Form for District expenses received through January 24, 2017." As Gifford's complaint and appellate briefing concede, this was the action the Board took. His issue seems to be with the Board's treatment of its action to approve bills and signatures as a single item of business.

*San Joaquin Raptor Rescue Center*, is instructive. There, the court found an agenda description lacking when it provided the planning commission would potentially approve a subdivision application to divide 380.45 acres into nine parcels. The agenda failed to mention the planning commission would also consider whether to adopt a

25

mitigated negative declaration concerning the environmental impact of the project. (*San Joaquin Raptor Rescue Center v. County of Merced* (2013) 216 Cal.App.4th 1167, 1170, 1176-1177.) At the meeting, the planning commission approved the project and adopted the mitigated negative declaration. (*Id.* at pp. 1176-1177.) When concluding the planning commission violated the Act, the court noted that the mitigated negative declaration was "plainly a distinct item of business, and not a mere component of project approval, since it (1) involved a separate action or determination by the Commission [(see Pub. Resources Code, §§ 21080, subds. (c) & (d), 21080.1, subd. (a))] and (2) concerned discrete, significant issues of [California Environmental Quality Act (CEQA)] compliance and the project's environmental impact." (*Id.* at p. 1177, fns. omitted.)

Similarly, in *Hernandez*, the court found an agenda insufficient when it described the council would discuss only a " 'Wal-mart Initiative Measure' and the direction to be given to staff" but failed to include that the council would also adopt a memorandum of understanding authorizing the acceptance of a gift from Walmart to pay for the special election to pass the initiative measure discussed. (*Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 197, 208-209.) In concluding the adoption of the memorandum of understanding was an individual item of business that must be described in the agenda, the court noted the importance of the action adopting the memorandum of understanding and the gift's potential relationship to the council's ultimate decision to approve the initiative measure. (*Id* at pp. 208-209.)

In both cases, the local agency took separate action on a discrete item other than that published. (See § 54952.6 [defining action taken as "a collective decision made by a majority of the members of a legislative body, a collective commitment or promise by a majority of the members of a legislative body to make a positive or a negative decision, or an actual vote by a majority of the members of a legislative body when sitting as a body or entity, upon a motion, proposal, resolution, order or ordinance"].) Here, the

Board took one action. Gifford does not allege that by that action the Board approved new contracts, passed resolutions or ordinances, hired new employees, or acted upon any discrete item outside that which was described as the approval of bills and signatures "for District expenses received through January 24, 2017."

This is enough to defeat Gifford's argument the District was required to list its expenses as individual items and we need not determine the significance of the Board's resulting action, as the other cases have. (See *Hernandez v. Town of Apple Valley*, *supra*, 7 Cal.App.5th at pp. 208-209; see also *San Joaquin Raptor Rescue Center v. County of Merced*, *supra*, 216 Cal.App.4th at p. 1177.) Given the Act's purpose "to facilitate public participation in *all phases* of local government decisionmaking" (*Golightly v. Molina*, *supra*, 229 Cal.App.4th at p. 1511, italics added), the significance of an action is irrelevant when it has been adequately described. Because the Board took one action on a single item, we rely on the language of the Act, which requires only "a brief general description of each item of business to be transacted or discussed at the meeting, . . . [which] generally need not exceed 20 words." (§ 54954.2, subd. (a)(1).) The District's January 2017 consent agenda met this standard.

Gifford's challenge to the District's public comment as described in the January 2017 agenda is also without merit. He contends the District's policy restricting comment on items appearing in the agenda until those items come up for discussion violates the Act. Not so. The Act requires there be time provided for public comment on any matter within the subject matter jurisdiction of the legislative body, as well as an opportunity for public comment on each agenda item before or during its consideration by the legislative body. (§ 54954.3, subd. (a); *Chaffee v. San Francisco Library Commission*, *supra*, 115 Cal.App.4th at pp. 468-469.) Subdivision (b)(1) expressly permits legislative bodies of local agencies to adopt reasonable regulations to ensure that the intent of subdivision (a) is carried out. "On the one hand, the Legislature declared the importance of open governance and the public's right to participate. On the other, it validated enactment of

27

limits on public speakers so that the business of government could function." (*Ribakoff v. City of Long Beach*, *supra*, 27 Cal.App.5th at pp. 172-173, fns. omitted.)

Limiting public comment on items described in the agenda to the time when those items are being considered by the Board is not an unreasonable regulation. This ensures the Board has a clear and complete understanding of the public concern regarding an item of business on the agenda at the time that item is to be transacted or discussed. Allowing public comment on agenda items during general public comment may defeat this purpose because it necessarily requires members of the Board to remember the comment for later action despite addressing other topics of public concern before that action can be addressed.[13] Because the District provides the public comment periods required by the Act and its restrictions regarding those comment periods are reasonable, Gifford has failed to allege a violation section 54960 in his complaint challenging the District's January 2017 agenda.[14]

### III

*The Attorney Fee Awards Must Be Stricken*

The District was awarded court costs and reasonable attorney fees pursuant to section 54960.5, which provides that "[a] court may award court costs and reasonable attorney fees to a defendant in any action brought pursuant to Section 54960 or 54960.1 where the defendant has prevailed in a final determination of such action and the court finds that the action was clearly frivolous and totally lacking in merit." "[A] trial court

---

[13] Just because this may be of concern to this local agency, does not mean it is of concern to others. We do not endorse any method of public comment, but merely review this District's chosen method for its reasonableness. (§ 54954.3, subd. (b)(1).)

[14] The District contends the trial court properly sustained the District's demurrer to Gifford's waste of public funds cause of action in his complaint challenging the January 2017 agenda. Gifford does not argue for reversal of this decision in his appellate briefing and accordingly we do not address it.

28

must specify with particularity the basis for the awarding [of] costs or attorney fees. The trial court must set forth the factual basis for the award either in a formal order, a minute order, or in the reporter's transcript of the hearing on the motion." (*Boyle v. City of Redondo Beach*, *supra*, 70 Cal.App.4th at p. 1121.)[15]

Because we have concluded plaintiffs' complaints challenging the August and September 2016 agendas state causes of action under the Act, those suits are not clearly frivolous and the District is not entitled to costs and attorney fees pursuant to section 54960.5.[16] We also conclude the District is not entitled to attorney fees from Gifford in the litigation resulting from Gifford's challenge to the January 2017 agenda, but for different reasons.

As described, the trial court entered judgment in Gifford's litigation challenging the District's January 2017 agenda on November 16, 2017. Gifford immediately filed his notice of appeal. In early January 2018, the trial court filed the District's prepared order nunc pro tunc to the date of entry of judgment explaining the reasons for sustaining the

---

[15] We may reach the merits of plaintiffs' attorney fee and costs arguments despite their failure to appeal the trial court's determination of the amounts to be awarded. "[W]hen a judgment awards costs and fees to a prevailing party and provides for the later determination of the amounts, the notice of appeal subsumes any later order setting the amounts of the award." (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 998.)

[16] Gifford contends the trial court erroneously denied the fee waiver application he presented with his motion to tax costs following dismissal of his complaint challenging the District's September 2016 agenda. He urges us to strike the trial court's order denying the waiver and refusing to file his motion to tax costs while the waiver was pending. Because we have reversed the trial court's award of costs and attorney fees, a favorable result for Gifford regarding his fee waiver contention would have no effect on the judgment. Thus, we need not address it. (See *California Housing Finance Agency v. Hanover/California Management & Accounting Center, Inc.*, *supra*, 148 Cal.App.4th at p. 688.) Further, the record does not indicate, and Gifford does not contend, he had to erroneously pay a fee to file his motion to tax costs. Thus, again, any favorable conclusion for Gifford cannot be said to cure an alleged wrong that occurred in the trial court.

demurrer and awarding attorney fees.  As Gifford argues, this was improper and will not support an attorney fee award.

Generally, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." (Code Civ. Proc., § 916, subd. (a).)  "The purpose of the automatic stay provision of [Code of Civil Procedure] section 916, subdivision (a) 'is to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided.  The [automatic stay] prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.)

The trial court retains jurisdiction after an appeal is perfected, however, to correct clerical errors.  (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 883 ["The perfection of plaintiff's appeal did not deprive the court of its inherent power to remedy what was merely a clerical error"].)  "The scope of orders and judgments nunc pro tunc in California has consistently been described by our Supreme Court in the following terms:  'A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order.  [Citations.]  It cannot, however, change an order which has become final even though made in error, if in fact the order made was that intended to be made. . . .  "The function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered -- not to make an order now for then, but to enter now for then an order previously made." ' " (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 890.)

In *Bed, Bath & Beyond*, the trial court issued a minute order granting summary adjudication on a cause of action and received a proposed order from defendant, but

failed to issue the formal order until after it entered judgment against the plaintiff and the plaintiff filed a notice of appeal. (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners*, *supra*, 52 Cal.App.4th at pp. 882-883.) The court observed that "the only reasonable inference from the unconverted evidence is that the [trial] court inadvertently neglected to enter the formal order submitted by [defendant]" and corrected its error by issuing a formal order and amended judgment, albeit after the plaintiff appealed. (*Id*. at p. 883.) Under these circumstances, "[t]he [trial] court's action is properly viewed as the correction of a *clerical*, as opposed to *judicial* error because it merely corrected the record to reflect an order actually made prior to judgment rather than entering a new order not previously made." (*Id*. at p. 884.)

Here, unlike *Bed, Bath & Beyond*, it is not clear the court was correcting a clerical error as opposed to filing an order justifying a decision it had already made. The District argues Gifford engaged in "appellate gamemanship" by having judgment entered before an adequate order was filed so that he could later challenge the attorney fee award as lacking a statement of reasons. While this may be true, there are adequate procedures in place to guard against such abuses. For example, the District asserts in its appellate brief that the trial court ordered it "to prepare a formal Order containing the Court's detailed findings," which it made at the hearing on the issue. The appellate record, however, is lacking the reporter's transcript of the hearing where the trial court purportedly made detailed findings and ordered the District to prepare an order. If the record included the court's findings and its direction to counsel, then it may be possible to substantiate that the order the trial court filed nunc pro tunc was intended to be filed with the judgment. How the appellate record currently stands, however, there is nothing to support the District's claim that the trial court intended a formal order to accompany the judgment, let alone that the order include the findings detailed in the District's prepared order. Because the record is lacking in this regard, the order filed nunc pro tunc necessarily alters the judgment actually rendered and was filed outside of the trial court's

31

jurisdiction. Accordingly, the order is void. (*Varian Medical Systems, Inc. v. Delfino*, *supra*, 35 Cal.4th at p. 198.)

Because the order providing reasons for the court's costs and attorney fee award pursuant to section 54960.5 is void, the record lacks a statement of reasons for their imposition. As a result, we must strike the costs and attorney fee award contained in the judgment dismissing Gifford's complaint challenging the District's January 2017 agenda.

DISPOSITION[17]

The judgments dismissing plaintiffs' complaints challenging the District's August 2016 agenda (cases Nos. SCCVPT161089 & SCCVPT161088) and September 2016 agenda (cases Nos. SCCVPT161293 & SCCVPT161292), and the related attorney fee awards, are reversed. The judgment dismissing Gifford's complaint challenging the District's January 2017 agenda (case No. SCCVPT170323) is modified to strike the attorney fee award but affirmed in all other respects. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/
Robie, J.

We concur:

/s/
Hull, Acting P. J.

/s/
Murray, J.

---

**17** The District moved to dismiss Gifford's appeal resulting from his challenge to the District's January 2017 agenda because Gifford had been adjudged a vexatious litigant a week before he filed his notice of appeal in that case. We denied this motion, which the District renews on appeal. We again deny the motion. Gifford has not initiated new litigation as prohibited by the court's order, but continued to pursue an action he initiated when he was not a vexatious litigant. (See *Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1172-1173.)